**Peter Norwood POPHAM,**
**Plaintiff-Appellee,**
**Cross-Appellant,**

v.

**CITY OF KENNESAW, a Municipal**
**Corporation, Defendant,**

**Robert Ruble; Dwaine Wilson; Kenneth**
**Carter, and Mike Saine,**
**Defendants-Appellants, Cross-Appellees.**

**Peter Norwood POPHAM,**
**Plaintiff-Appellant,**
**Cross-Appellee,**

v.

**CITY OF KENNESAW, a Municipal Corporation, Robert Ruble, Dwaine Wilson, Kenneth Carter, and Mike Saine, Defendants-Appellees, Cross-Appellants.**

**Nos. 85–8986, 86–8355.**

United States Court of Appeals,
Eleventh Circuit.

July 15, 1987.

---

Brady D. Green, Redfern, Green & Hoffman, Atlanta, Ga., for defendant.

William J. Cobb, Eric G. Kocher, Atlanta, Ga., for plaintiff-appellee.

Peter Norwood Popham, pro se, to the cross-appeal only.

Before HILL and JOHNSON, Circuit Judges, and HENLEY[*], Senior Circuit Judge.

JOHNSON, Circuit Judge:

## I

## BACKGROUND

These appeals arise out of the arrest of Peter Popham at a candidate's forum in Kennesaw, Georgia, in September 1982. During the midst of the campaign season for City Council, the Kennesaw Jaycees and the Kennesaw Business Association conducted an open "Meet the Candidates" forum. Popham attended that forum as a member of the public. During the forum, Darvin Purdy, the Mayor of Kennesaw, presented to the candidates for their signatures a waiver permitting the votes cast in the upcoming election to be tallied in the Council's chambers instead of at the polling place. At that point Popham obtained permission to speak from the forum moderator.

Popham had run against Purdy for mayor the previous year. After losing, Popham had unsuccessfully challenged the election in state court. One of the grounds of his complaint was that voting officials had removed the ballot boxes from the polling place prior to counting the votes. Thus, when Purdy offered the waiver to the candidates, Popham challenged the legality of removing the ballot boxes and soon began mentioning the improprieties that he felt had occurred in his race against Purdy. The moderator then ruled Popham out of order because he was discussing matters outside the forum's agenda. Despite the moderator's efforts to gavel him down, Popham continued speaking, raising his voice over the gavelling and the increasingly fractious audience.

The details of what happened next are disputed. According to Popham, Robert Ruble, the Kennesaw Chief of Police, rushed across the room and immediately placed him under arrest. When Ruble reached for him, Popham pulled his arm away. Ruble then shoved him onto the floor while Dwaine Wilson, another police officer, tackled him from behind. Once Popham was on the floor, Ruble immediately began choking him and kneeing him in the groin. At the same time, Wilson and two other police officers—Mike Saine and Kenneth Carter—descended on him. Saine yanked on his legs while Wilson and Carter bent back his wrists. Popham contends that he did not fight back. Finally he was handcuffed and taken to the police station.

The defendants recount the incident differently. They contend that Ruble asked Popham to be seated. When Popham continued to talk, Ruble warned him that, if he continued to speak, he would be arrested. Nonetheless, Popham persisted in speaking, so Ruble informed him that he was under arrest and would have to leave the room. When Ruble placed his hand on Popham's arm in order to escort him out of the room, Popham yanked his arm back and then struck Ruble in the face. Ruble then reached for Popham again, but the two lost their balance and fell onto the floor. Once on the floor, Popham placed his legs in a scissor lock around Ruble's waist and began thrashing about with his arms. Wilson and Carter rushed to place handcuffs on Popham while Saine tried to unlock Popham's legs. While flailing his arms about, Popham struck Wilson in the eye. Meanwhile, as Ruble pushed on Pop-

---

[*] Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

ham to keep him on the floor, Popham began to bite one of Ruble's fingers. Ruble used his free hand to squeeze Popham's throat so that Popham would release his finger. Ruble denies ever kneeing Popham in the groin.

Popham was charged with disturbing the peace, resisting arrest, and battery but was acquitted on all charges. Popham then filed suit against Ruble, Wilson, Carter, Saine, and the City of Kennesaw under 42 U.S.C.A. §§ 1983, 1985, 1986, and 1988; the First, Fourth, Fifth, Eighth, and Fourteenth Amendments; and state tort law. Popham argued that the police officers were liable to him for violating his First Amendment rights, for false arrest, for the use of excessive force in making the arrest, for inflicting cruel and unusual punishment, for battery, and for malicious prosecution. Popham argued that the City was liable to him for negligently training the police officers and for ratifying their acts against him. Ruble and Wilson asserted a counterclaim against Popham for the injuries they had received in arresting him.

The district court denied the defendants' motion for summary judgment but nonetheless dismissed, with Popham's consent, the claims under Sections 1985 and 1986 and the state law claims against the City. The matter then came to trial, and at the close of Popham's case the defendants moved for a directed verdict. Popham conceded at that time that both the Eighth Amendment and the negligent training claims should be dismissed. With the exception of those two claims, the court denied the motion for directed verdict. The court denied another motion by the defendants for a directed verdict at the close of their case, and the case then went to the jury on special interrogatories. The jury found for the City on all issues and for the police officers on all issues except one. They found that the four officers had used excessive force in arresting Popham and awarded him $30,000 in compensatory damages. However, in answering the special interrogatories, the jury indicated that the police officers were entitled to immunity. Therefore, before entering judgment on the verdict, the court directed the parties to submit briefs on the issue of whether the officers were entitled to immunity for their use of excessive force. The court determined that the defendants were not entitled to immunity and accordingly entered judgment in favor of Popham.

The police officers then filed a motion for judgment n.o.v. or, in the alternative, for a new trial. The City filed a motion to alter and amend the judgment because the court had mistakenly entered judgment against it in addition to the officers. The court denied the police officers' motion but granted the City's. In a subsequent proceeding, the court awarded Popham one-third of the attorneys' fees he requested and denied the defendants' request for attorneys' fees. These appeals followed.

II

DISCUSSION

A. SPECIAL INTERROGATORIES

The defendants contend that the district court erred in interpreting the jury's answers to the special interrogatories. There is, without a doubt, an apparent inconsistency in the jury's answers. As indicated, in response to Special Interrogatory 3, the jury found that the defendants had used "force shockingly disproportionate to the need" and, in response to Special Interrogatory 7, awarded Popham $30,000 in compensatory damages for the deprivation of his constitutional rights. The jury also found that the defendants possessed probable cause to arrest Popham (Interrogatory 1) and that the defendants did not arrest Popham for the purpose of depriving him of his First Amendment right to speech (Interrogatory 2). No other grounds of liability for the deprivation of constitutional rights were presented to the jury. Therefore, the jury must have intended the $30,000 award to be compensation for the excessive force used in effecting the arrest. However, in response to Special Interrogatory 4, the jury found that the defendants were entitled to qualified immunity. Such a finding seems inconsistent with the award of $30,000.

■ Fed.R.Civ.P. 49(b) provides in part, "When the [jury's] answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial." However, the Seventh Amendment requires a court to interpret a jury's answers to special interrogatories, if at all possible, so that there is no inconsistency. *Gallick v. Baltimore & Ohio Railroad Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963); *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). In doing so, the court must consider all the circumstances, especially the issues submitted to the jury, the instructions to the jury, and any expressions of the jury extrinsic to their answers to the interrogatories. *Gallick*, 372 U.S. at 120–22, 83 S.Ct. at 666–68; *Griffin v. Matherne*, 471 F.2d 911, 915–16 (5th Cir.1973).

■ Assessing the jury's answers here in the light of the Seventh Amendment's command, we conclude that the district court properly entered judgment in favor of Popham, for we believe that the jury did not intend their finding that the defendants were entitled to qualified immunity to apply to the excessive force claim. First, we note that Interrogatory 4 did not ask specifically whether the defendants were entitled to immunity for the use of excessive force. Instead, it asked simply, "Were the defendant officers entitled to immunity." Therefore, the jury's finding that the defendants were entitled to immunity may have referred to the false arrest and First Amendment claims only.

The instructions to the jury bolster that interpretation. When instructing the jury on the excessive force claim, the court did not mention that the jurors had to decide whether the defendants were entitled to immunity for the use of excessive force. In contrast, the court specifically instructed the jury that, if they found the defendants had arrested Popham without probable cause, they would also have to decide whether the defendants were entitled to immunity. Thus, the court's instructions explicitly linked the question concerning qualified immunity to the false arrest claim only. Although the court never explicitly instructed the jury that the qualified immunity claim did not apply to the excessive force claim, the court's subsequent explanation of the verdict form did not clearly contradict the effect of its instructions.[1]

Furthermore, we attach considerable importance to the jury's extrinsic comments. During their deliberations, the jury asked the court:

> If we wish to award plaintiff for reimbursement of lost wages, medical fees, and humiliation because of excessive force in the arrest, can we do this with a "no" answer to # 2 and a yes answer to # 1. What # on the questionnaire would this money appear.

The court responded:

> As I understand your question, the proper sequence of answers would be "yes" to # 1, "no" to # 2, "yes" to # 3 and compensatory damages in a dollar amount in # 7.

That the jury answered the interrogatories in precisely that manner strongly indicates that the jury did not intend for the defendants to enjoy immunity for their use of excessive force.

---

1. In explaining the verdict form, the court stated:

> Question 4 is a question on qualified immunity. As I told you the defendant police officers contend that they are not liable to the plaintiff for a violation of his civil rights because they have a qualified immunity. A police officer would have qualified immunity if a reasonable officer in the position of the defendants truly believed that his actions were lawful and within the scope of his authority. But if they lacked that good faith in

their own actions and if they acted ulteriorly, that is, for other purposes, to deprive the plaintiff of his constitutional rights then, of course, there would not be that good faith but a good faith exercise of the reasonable police officer under the circumstances is a defense, and if you so find, you would answer "yes" with respect to the officer involved in 4. If you find that the officer was acting for an unlawful purpose ulteriorly and not truly to enforce the law then, of course, a checkmark by the word "no" would be in order.

Finally, we note that, if the jury's finding that the defendants are entitled to qualified immunity is interpreted as applicable to the excessive force claim, the jury's award to Popham of $30,000 is completely nonsensical. As indicated, the only constitutional violation the jury found was the use of excessive force. Therefore, if the defendants were entitled to immunity for their use of excessive force, Popham was not entitled to any award. The jury's award is sensible, however, if the finding of qualified immunity is interpreted as inapplicable to the excessive force claim. Consequently, we are convinced that the jury did not intend for their finding that the defendants are entitled to qualified immunity to apply to the excessive force claim. Thus, the district court properly entered judgment in favor of Popham.

The parties expend considerable time debating whether police officials can receive immunity for the use of excessive force. Our holding obviates the need to resolve that debate for, even assuming *arguendo* that police officials can receive such immunity, the jury found that the defendants here were not entitled to immunity.

### B. JUDGMENT N.O.V.

The defendants also contend that the district court erred in denying their motion for judgment n.o.v. On a motion for judgment n.o.v., the court must assess the evidence in the light most favorable to the nonmoving party and can grant the motion only where the evidence so strongly and favorably points in favor of the moving party that a reasonable jury could not arrive at a contrary verdict. *Jackson v. Magnolia Brokerage Co.*, 742 F.2d 1305, 1307 (11th Cir.1984); *Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1057 (11th Cir.1982). Of course, the nonmoving party is not entitled to prevail simply because there is some evidence in his favor. Instead, there must be a conflict in substantial evidence. *King v. Exxon Co., U.S.A.*, 618 F.2d 1111, 1116 (5th Cir.1980). In deciding whether such a conflict exists, however, the court cannot reweigh the evidence or assess credibility. *Jackson*, 742 F.2d at 1307; *Rabun*, 678 F.2d at 1057.

■ Before turning to the record, we point out that whether the force used in making an arrest is excessive depends upon the facts of each case. *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir. Unit A 1981). As this Court stated in *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1500–01 (11th Cir.1985) (en banc), *cert. denied,* — U.S. —, 106 S.Ct. 1970, 90 L.Ed.2d 654, and *cert. denied sub nom. Sampson v. Gilmere,* — U.S. —, 106 S.Ct. 1993, 90 L.Ed.2d 673 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)):

> "In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."

Thus, force that may be considered excessive in one setting may be considered necessary and reasonable under different circumstances. Consequently, we reject the defendants' suggestion that they are entitled to prevail simply because in some instances force sufficient to cause injuries arguably comparable to Popham's was not considered excessive. *See, e.g., LeSavage v. White*, 755 F.2d 814, 822 (11th Cir.1985); *Shillingford*, 634 F.2d at 264–65. Nor are they entitled to prevail because in other cases force sufficient to cause death was not considered excessive. *See, e.g., Owens v. City of Atlanta*, 780 F.2d 1564, 1566–67 (11th Cir.1986); *Williams v. Kelley*, 624 F.2d 695, 696–98 (5th Cir.1980), *cert. denied,* 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981).

■ Our review of the record indicates that a reasonable jury could have found that the defendants used excessive force. First of all, a reasonable jury could have found that the need to initiate force was minimal. Popham admitted that he refused to leave with Ruble and that he pulled his arm out of Ruble's grip. He told Ruble

that he had been given the floor and that he had a right to speak. However, he denied ever striking Ruble. Richard Butler, who was sitting next to Popham, confirmed Popham's account. He testified that Popham did not exhibit any "hostile action" towards Ruble and that Popham never struck Ruble. As the defendants point out, the record does contain contrary evidence. Ruble testified that Popham struck him after jerking his arm away, and several witnesses agreed with him. However, their testimony was contradictory—some testified that Popham used his right hand and others testified that he had used his left hand. Furthermore, as was brought out on cross-examination, some of those witnesses had testified at Popham's criminal trial that Popham had not struck Ruble. At any rate, evidence need not be one-sided in order for a jury to reach a reasonable conclusion.

A reasonable jury could have found also that, after Popham jerked his arm away, Ruble and Wilson pushed Popham to the floor. Ruble and others testified that Popham simply stumbled and fell. Popham testified, however, that Ruble pushed him from the front while Wilson tackled him from behind. Butler's testimony agreed with Popham's account. Furthermore, photographs taken by a local journalist covering the meeting show Ruble and Wilson grabbing Popham and pushing him down. The jury also could have concluded that, after Popham was on the floor, Ruble unnecessarily choked him. Ruble admits choking Popham but testified that he did so only because Popham was biting one of his fingers. However, several photographs show Ruble choking Popham even though Popham is not biting any of his fingers. Ruble explained that, in order to restrain Popham, he simply kept his hand around Popham's neck after his finger was released. However, based on Popham's testimony that Ruble choked him throughout the incident, the look on Popham's face in

the photographs, and the testimony of Dr. Hicks, who examined Popham two days after the incident, that Popham had suffered a significant compression of the larynx, a reasonable jury could have disagreed with Ruble's characterization of his actions. A reasonable jury also could have concluded that Ruble kneed Popham in the groin. Although Ruble denied doing so, Popham testified that Ruble did so. The pictures indicate that Ruble was in a position to do so, and Dr. Hicks found Popham's groin to be tender and sore. Finally, it should be kept in mind that three other officers were assisting Ruble and that there was conflicting evidence as to whether Popham fought back. Consequently, a reasonable jury could have found that the defendants used force "shockingly disproportionate" to that needed. Admittedly, a different trier of fact could have arrived at a different outcome. However, a losing party is not entitled to judgment n.o.v. simply because another verdict is not unreasonable.

## C. MOTION FOR NEW TRIAL

The defendants also argue that, because the verdict is contrary to the great weight of the evidence, the district court erred in denying their motion for a new trial. A district court can grant a motion for a new trial if the jury's verdict is contrary to the great weight of the evidence. Unlike the standard employed in deciding a motion for judgment n.o.v., the court can reweigh the evidence in deciding whether to grant a new trial. Its decision, however, can be reversed only for an abuse of discretion. *Jackson*, 742 F.2d at 1307; *Rabun*, 678 F.2d 1060. As our discussion of the facts in the preceding section indicates, the jury's verdict is reasonably supported by the record. Therefore, also factoring in considerations of demeanor and credibility, the district court did not abuse its discretion in denying the defendants' motion for a new trial.[2]

---

2. Popham raises a number of issues on cross-appeal, none of which are meritorious. First, Popham challenges the jury's determination of the First Amendment claim against him. However, he cannot challenge that finding here because he never moved for a directed verdict, for judgment n.o.v., or for a new trial on that claim. Second, Popham requests a new trial so he will not be bound by the stipulations and admissions his counsel made regarding his claims under

## D. POPHAM'S ATTORNEYS' FEES

Relying on Section 1988 and 28 U.S.C.A. § 1920, Popham requested $47,123.75 in attorneys' fees and an additional $3,771.70 in expenses. The district court, applying the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), found that the number of hours expended by and the rates requested by Popham's counsel were reasonable. However, relying on *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the court reduced the fees Popham requested by 67% and awarded him only $16,965.15 in attorneys' fees plus expenses. Popham challenges the court's reduction in his fee request.

 Section 1988 authorizes an award of attorneys' fees to the prevailing party in a Section 1983 proceeding.[3] Because Section 1988 is designed to vindicate federal constitutional and statutory rights, a prevailing plaintiff ordinarily should recover attorneys' fees. *Smith v. Robinson*, 468 U.S. 992, 1006, 104 S.Ct. 3457, 3465, 82 L.Ed.2d 746 (1984). However, where the plaintiff prevails on only some of his claims, as is the case here, special considerations come into play. First, the court should calculate the lodestar amount—the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. Having calculated that amount, the court can then reduce the lodestar to reflect the plaintiff's partial success. If the claims on which the plaintiff did not prevail and the claims on which he did prevail were "distinctly different claims ... based on different facts and legal theories," the court cannot award any fee for services on the unsuccessful claims. *Id.* at 434–35, 103 S.Ct. at 1939–40. However, if the unsuccessful and the successful claims "involve a common core of facts" or are "based on related legal theories," the court must compare the plaintiff's overall relief with the number of hours reasonably expended on the litigation. *Id.* at 435, 103 S.Ct. at 1940. If the plaintiff obtained "excellent results," his attorney should be fully compensated for all time reasonably expended on the litigation. *Id.* However, if the plaintiff obtained only "partial or limited success," the court may reduce the lodestar amount if it believes that amount

---

Sections 1985 and 1986. A party is bound by the admissions and stipulations of his counsel absent a showing of manifest injustice. *Hill v. Nelson*, 676 F.2d 1371, 1373 n. 8 (11th Cir.1982). No such showing was made here. Third, Popham objects to the district court's failure to bifurcate the trial. A court's decision whether to bifurcate a trial will not be upset absent an abuse of discretion. Fed.R.Civ.P. 42(b); *Easton v. City of Boulder, Colorado*, 776 F.2d 1441, 1447 (10th Cir.1985), *cert. denied*, —— U.S. ——, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). Popham stated in the pretrial order that he did not want a bifurcated trial; the court did not abuse its discretion in deferring to that request. Fourth, Popham objects to the court's resolution of the apparently inconsistent jury answers. However, the court resolved that apparent inconsistency in a way that resulted in judgment being entered in Popham's favor. Therefore, from Popham's perspective, the court's treatment was at worst harmless error. Fed.R.Civ.P. 61. Fifth, Popham objects to his counsel's dropping of the Eighth Amendment claim. As indicated, Popham cannot object to that action absent a showing of manifest injustice which he has failed to do. Sixth, Popham argues that his counsel should have put on additional medical evidence at trial, called additional witnesses, and named additional defendants. This fails to state a cognizable claim. Seventh, Popham objects to the jury charge on the First Amendment and the qualified immunity questions. However, he has failed to specify in what way the jury charge was improper. Finally, he objects to the order deleting the City as a liable party. That order was unquestionably proper. The jury specifically found that the City was not liable, but the court inadvertently entered judgment against it.

3. Section 1988 provides in part:
 In any action or proceeding to enforce a provision of Sections 1981, 1982, 1983, 1985, and 1986 of this title, Title IX of Public Law 92–318, or Title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 42 U.S.C.A. § 1988. Having sued for damages and having obtained a $30,000 judgment against four of the five defendants, Popham undeniably is a prevailing party within the meaning of Section 1988. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939 (plaintiffs are prevailing parties " 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit' ") (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)).

is excessive in relation to the plaintiff's relief. That decision rests in the discretion of the district court. *Id.* at 436–37, 103 S.Ct. at 1941–42.

▮ Popham argues that the district court misapplied those guidelines in reducing his request for attorneys' fees. First, Popham objects to the district court's consideration of whether any of the unsuccessful claims were frivolous. He contends that *Hensley* does not authorize a court to consider the merits of unsuccessful claims in determining the significance of the plaintiff's overall relief. However, even if Popham's reading of *Hensley* is correct, it is clear that "[t]ime spent pursuing unsuccessful claims that were clearly without merit should be excluded" from the lodestar amount. *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.) (en banc), *cert. dismissed sub nom. Ledbetter v. Jones,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981). Therefore, the court did not err in considering whether any of the unsuccessful claims were frivolous.

▮ Popham also contends that the court erroneously relied on the fact that he prevailed on only one out of eight claims asserted against the individual defendants and that he failed to recover at all against the City. As Popham correctly points out, in *Hensley* the Supreme Court explicitly rejected a proportional reduction in the lodestar amount based simply on "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." *Id.,* 461 U.S. at 435 n. 11, 103 S.Ct. at 1940 n. 11. The district court, however, did not rely on such a simplistic test in reducing Popham's request for attorneys' fees. Instead it considered the factors outlined in *Johnson* and emphasized that Popham had obtained only a minuscule fraction of the relief he had requested and that much of the trial involved the presentation of matters seemingly unrelated to the excessive force claim. The court did rely to some degree on the fact that Popham prevailed on only one of his claims. However, in *Hensley* the Supreme Court did not hold that comparing the number of successful claims to the number of

claims brought was an irrelevant consideration. To the contrary, that comparison is germane to determining the degree of the plaintiff's success, and the Supreme Court has even implicitly endorsed such a comparison. *See id.* at 436, 103 S.Ct. at 1941 ("But had respondents prevailed on only one of their six general claims ... a fee award based on the [total] claimed hours clearly would have been excessive."). Of course, that comparison cannot be the central factor in the court's analysis, much less the sole factor. However, the district court did not err in calculating that factor into its analysis.

Popham argues next that the district court erred in concluding that, because the unsuccessful claims were unrelated to the excessive force claim, he was not entitled to attorneys' fees for time spent on those claims. Because plaintiff's counsel is required to "explore every aspect of the case, develop all the evidence and present it to the court," *Jones,* 636 F.2d at 1382, courts have expansively treated claims as being related. *See, e.g., Goodson v. City of Atlanta,* 763 F.2d 1381, 1389–90 (11th Cir. 1985) (false arrest and imprisonment claim related to claim challenging prison conditions); *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, 1137 (11th Cir.1984) (claims challenging failure to hire and to promote related to equal pay claim); *Morgado v. Birmingham-Jefferson County Civil Defense Corps,* 706 F.2d 1184, 1192–93 (11th Cir.1983), *cert. denied sub nom. Personnel Board of Jefferson County v. Morgado,* 464 U.S. 1045, 104 S.Ct. 715, 79 L.Ed.2d 178 (1984) (accord). The claims Popham raised, arising out of the same course of conduct, share a common core of facts and thus are related for purposes of Section 1988. Therefore, had the district court refused to award attorneys' fees for the time expended on the unsuccessful claims simply on the grounds that they were unrelated to the excessive force claim, the district court would have been in error.

▮ However, as *Hensley* itself indicates, a court can reduce attorneys' fees from the lodestar amount even though the

unsuccessful and the successful claims are related if the plaintiff obtained only limited success. A full reading of the district court's order indicates that, in reducing Popham's request for attorneys' fees, the court centrally relied on the grounds that Popham had obtained only limited success. The district court did point out that a substantial portion of the case concerned the presentation of Popham's longstanding political differences with city officials. Despite the court's suggestion to the contrary, such matters were germane to the excessive force claim because a police officer's motives in using force are relevant to a finding whether that officer used excessive force. *Gilmere,* 774 F.2d at 1500–01. Nonetheless, the court's central emphasis on Popham's limited success redeems the district court's order under *Hensley.*

Popham also disagrees with the district court's conclusion that he obtained only limited success. He contends principally that the court failed to give any consideration to the non-monetary value inherent in vindicating a constitutional right. The affirmation of constitutional principles produces an undoubted public benefit that courts must consider in awarding attorneys' fees under Section 1988. *City of Riverside v. Rivera,* — U.S. —, 106 S.Ct. 2686, 2694–95, 91 L.Ed.2d 466 (1986) (plurality opinion). When courts affirm the constitutional rights of citizens, public officials are deterred from violating other citizens' rights in the future. Thus, in awarding attorneys' fees under Section 1988, courts should not place *"undue* emphasis on the modest money damages that were found by the jury." *Williams v. Thomas,* 692 F.2d 1032, 1038 (5th Cir.1982) (emphasis added). This is especially true in the area of police misconduct where injunctive relief is generally unavailable to safeguard individual rights. *Rivera,* 106 S.Ct. at 2695. Consequently, the district court here would have erred had it ignored the fact that Popham benefitted the public interest by vindicating his constitutional rights.

■ However, despite Popham's assertion to the contrary, the district court did not overlook the public benefit flowing from Popham's victory. Instead, the court found that Popham's enforcement of a constitutional right did not foreclose a reduction in the lodestar amount. We agree. Otherwise, *Hensley* would be incomprehensible because a reduction in attorneys' fees under Section 1988 would never be warranted. In certain instances the plaintiff's relief may engender specific spillover benefits for non-parties. In those instances, the public benefit may assume a principal significance in the court's calculus. For example, in *Rivera,* a police misconduct case in which the district court did not reduce the lodestar amount even though the plaintiffs did not prevail on all of their claims, the district court noted that the lawsuit had helped stop institutional mistreatment of Chicanos by the city's policemen. That is not to say, however, that in such cases a reduction in the lodestar amount is always inappropriate. Rather the weight given to such considerations rests in the discretion of the district court. We find no abuse in the weight the court gave to the public benefit here.

Popham also contends that, in gauging the extent of his success, the district court improperly compared the damages he sought against those he actually received. Popham sought $2,000,000 in compensatory and punitive damages, but the jury awarded him only $30,000. Popham, citing *Rivera,* contends that the district court erred in relying on that comparison in determining his degree of success. *Rivera,* however, held only that attorneys' fees under Section 1988 are not unreasonable *per se* if they exceed the damages awarded in the underlying civil rights action. 106 S.Ct. at 2694. That holding does not foreclose a court from comparing the amount of damages a plaintiff requested with the amount of damages he received in determining the degree of that plaintiff's success. To the contrary, there is a suggestion in *Rivera* that a court must make such a comparison. *Id.* at 2700 (Powell, J., concurring) ("Where recovery of private damages is the purpose of a civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount

sought."). Also, in *Hensley* the Court stated, "Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested." 461 U.S. at 435 n. 11, 103 S.Ct. at 1940 n. 11. That statement indicates that the relief a plaintiff requested is indeed relevant to determining the extent of that plaintiff's success. Furthermore, we note that, in determining a plaintiff's degree of success, courts have compared the relief requested against the relief ultimately obtained. *See, e.g., Erkins v. Bryan,* 785 F.2d 1538, 1545 (11th Cir.) *cert. denied,* — U.S. —, 107 S.Ct. 455, 93 L.Ed.2d 402 (1986); *Nephew v. City of Aurora,* 766 F.2d 1464, 1465–67 (10th Cir. 1985). Therefore, in assessing the significance of Popham's recovery, the district court did not err in comparing the damages Popham sought with those he actually received.

We also reject Popham's argument that an award of $30,000 inherently constitutes significant relief prohibiting a reduction in the lodestar amount. Whether the plaintiff's relief is significant depends upon "the scope of the litigation as a whole." *Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943. Therefore, we cannot say that an award of $30,000 necessarily precludes a reduction in the lodestar amount.

Popham argues finally that, assuming that the district court did consider the public benefit flowing from the lawsuit and that the court could properly compare the damages he received against those he originally sought, the district court abused its discretion in reducing his fee request by 67%. A district court's determination of a reasonable fee will not be upset absent an abuse of discretion. *Gaines v. Dougherty County Board of Education,* 775 F.2d 1565, 1571 (11th Cir.1985); *Goodson,* 763 F.2d at 1390. We find no such abuse here. Popham's lawsuit did not result in specific, identifiable benefits to non-parties. Nor is there any suggestion that it challenged an institutional practice of police misconduct. Furthermore, Popham received only 1.5% of the damages he sought. Under such circumstances an award of only one-third the lodestar amount is not abusive. *See Erkins* 785 F.2d at 1544–46 (in case applying *Hensley* to attorney's fees under Labor-Management Reporting and Disclosure Act, reduction of fees by 60% not an abuse of discretion where plaintiff obtained only 10% of amount sought in the complaint). Popham's criticism essentially decocts to the proposition that the court should have eliminated fees only for hours specifically spent on unsuccessful claims. However, in *Hensley,* 461 U.S. at 436–37, 103 S.Ct. at 1941, the Supreme Court explicitly stated that a court could simply reduce the award to account for the plaintiff's limited success instead of eliminating hours specifically expended on unsuccessful claims. Nor did the court err by failing to consider that Popham's trial counsel did not initiate the lawsuit and therefore was not responsible for the complaint. Popham's request for attorneys' fees encompassed the time expended by both initial and trial counsel. Therefore, in setting Popham's award, the court properly examined the entire scope of the litigation. Consequently, we find nothing untoward in the district court's award.

■ Although we affirm the district court's reduction in Popham's request for attorneys' fees, we reverse the award of attorneys' fees against the City. Attorneys' fees cannot be imposed against a governmental entity under Section 1988 where a plaintiff prevails against that entity's employees in their individual capacity only. *Kentucky v. Graham,* 473 U.S. 159, 167–68, 105 S.Ct. 3099, 3106–07, 87 L.Ed.2d 114 (1985). Although Popham sued Ruble, Wilson, Carter and Saine in both their official and individual capacities, in what capacity they were found liable depends upon the course of the proceedings. *Id.* at 167 n. 14, 105 S.Ct. at 3106 n. 14; *Brandon v. Holt,* 469 U.S. 464, 469–71, 105 S.Ct. 873, 876–78, 83 L.Ed.2d 878 (1985). In answering the special interrogatories, the jury found that the City did not authorize or ratify the acts of the four officers. That fact conclusively indicates that the defendants were found liable in their individual capacity only. Whereas personal-capacity suits impose liability directly on government officials for actions taken under color of state law, an official-capacity suit is in actuality a suit

against the governmental entity itself. Therefore, if a plaintiff in a Section 1983 suit prevails against government officials but the governmental entity for whom those officials act remains free from liability, the plaintiff has prevailed against the officials in their personal capacity only. *Graham*, 473 U.S. at 168–70, 105 S.Ct. at 3107–08. A municipality is liable under Section 1983 only if its "policy or custom" played a part in the constitutional deprivation. *Oklahoma City v. Tuttle*, 471 U.S. 808, 817, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985); *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Therefore, the jury's finding means that the City is not liable on the excessive force claim, and thus Popham prevailed against the individual defendants in their personal capacity only. Consequently, the district court erred to the extent it awarded attorneys' fees against the City.

### E. DEFENDANTS' ATTORNEYS' FEES

Both the City and the individual defendants challenge the denial of their request for attorneys' fees with respect to those claims resolved in their favor. The district court declined to grant them attorneys' fees because, although it believed that the unsuccessful claims may have been "vexatiously brought in order to harass or embarrass the defendants," it believed that the reduction in Popham's attorneys' fees was an "equitable approach to this attorney's fees conflict."

■ We disagree. Attorneys' fees can be awarded to a prevailing defendant in a Section 1983 action if the plaintiff's suit was "frivolous, unreasonable, or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (quoting *Christiansburg Garment Co. v.*

*EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978)). Quite rightly, this rule prevents defendants from bearing expenses entailed in defending against frivolous Section 1983 claims. Not awarding a plaintiff attorneys' fees with respect to any of his claims that are frivolous does not alone serve the same purpose, for it does not relieve the defendant from paying the attorneys' fees he incurred in defending against those frivolous claims. Thus, simply denying a plaintiff attorneys' fees is hardly an "equitable approach" if the defendant should not suffer from defending against frivolous claims.

■ That is not to say, however, that the district court's denial of the individual defendants' request for attorneys' fees must be reversed because we believe that the district court implicitly found that the claims Popham unsuccessfully asserted against them were not frivolous. Popham requested $47,123.75 in attorneys' fees. The district court adopted that amount as the lodestar, finding that the number of hours expended and the hourly rates requested were reasonable. In determining the lodestar, a court must exclude hours expended on frivolous claims. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939; *Jones*, 636 F.2d at 1382. Therefore, had the district court believed that any of Popham's claims were frivolous, it would have found that the number of hours reasonably expended on the litigation was less than the number Popham requested.[4] Thus, by finding that Popham's request was reasonable, the district court implicitly found that the claims Popham unsuccessfully asserted against the individual defendants were not frivolous. Because the district court did not abuse its discretion in making that finding, *Beard v. Annis*, 730 F.2d 741, 745 (11th Cir.1984), the individual defendants are not entitled to attorneys' fees.

---

**4.** Popham did request attorneys' fees for fewer hours than his attorneys actually expended. However, that voluntary reduction eliminated compensation for such matters as briefing new counsel, unsuccessfully looking for witnesses, and travel time. Popham also reduced his request by 10% to account for his limited success.

He did not make any reduction on the grounds that his unsuccessful claims were frivolous. Therefore, had the district court believed that some of Popham's claims were frivolous, it would have found that the number of hours reasonably expended on the litigation was less than the number Popham requested.

■ Although the district court implicitly found that the unsuccessful claims asserted against the individual defendants were not frivolous, the court did not make a similar finding with respect to the claims asserted against the City. Popham's request for attorneys' fees properly did not include compensation for any hours spent exclusively on claims asserted against the City. Having failed to prevail against the City on any claim, Popham obviously could not have obtained attorneys' fees against the City. Therefore, the district court's finding that the number of hours Popham requested was reasonable cannot be interpreted as an implicit finding that the claims asserted against the City were not frivolous. Nonetheless, the City urges us to hold that the claims Popham asserted against it were frivolous and that it is entitled to attorneys' fees. However, we believe that determination should be made in the first instance by the district court.

■ Admittedly, in denying the defendants' request for attorneys' fees the district court stated that Popham arguably brought his unsuccessful claims to harass the defendants. If a plaintiff brings a lawsuit for a vexatious purpose or in bad faith, i.e., not in the hope of winning but solely in order to put the defendant to the burden of defending himself, the prevailing defendant arguably is entitled to attorneys' fees regardless of whether the plaintiff's claims technically were frivolous. *See, e.g., Christiansburg,* 434 U.S. at 419, 98 S.Ct. at 699; *Alyeska Pipeline Co. v. Wilderness Socie-* ty, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622–23, 44 L.Ed.2d 141 (1975); *Smith v. Smythe-Cramer Co.,* 754 F.2d 180, 183 (6th Cir.), *cert. denied,* 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985). However, because Popham prevailed on the excessive force claim, we cannot say that any of the unsuccessful claims, arising out of the same set of circumstances as the excessive force claim, were brought in bad faith. *Keyes v. Lauga,* 635 F.2d 330, 334 (5th Cir. Unit A 1981). Therefore, none of the defendants are entitled to attorneys' fees on the ground that Popham brought the unsuccessful claims for a vexatious purpose.

Consequently, we AFFIRM the entry of judgment in favor of Popham and the denial of both the defendants' motion for judgment n.o.v. and their motion for a new trial. We also AFFIRM the reduction in Popham's request for attorneys' fees but REVERSE the entry of attorneys' fees against the City. Finally, we AFFIRM the denial of the individual defendants' request for attorneys' fees but REVERSE the denial of the City's request for attorneys' fees and REMAND that request to the district court for a determination of whether the claims asserted against the City were frivolous.