[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13671

Non-Argument Calendar

_____

LUIS ALEXANDER, III,

Plaintiff-Appellant,

*versus*

K. BELL,
Deputy,

Defendant-Appellee,

PASCO COUNTY SHERIFF'S OFFICE,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-01834-MSS-AAS

_____

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Luis Alexander, III, a pre-trial detainee proceeding pro se, appeals the district court's finding of qualified immunity and grant of summary judgment for Pasco County Deputy Kevin Bell. Alexander argues that Bell violated his clearly established right to be free from excessive force when Bell placed him in a chokehold and conducted a "takedown maneuver." Because there is not binding caselaw which establishes that chokeholds are unconstitutional in a situation analogous to this one, we must **AFFIRM** the district court's order.

I.

Alexander was booked into Pasco County Jail in December of 2018. On May 2, 2019, he was making a call in the telephone booth in his housing unit. At the end of his call, he stood up from his chair, in violation of an inconsistently enforced rule that inmates had to be seated while on the phone. Bell then entered the housing unit, saw that Alexander was standing, and told him to sit down. Alexander did not comply with Bell's order. Bell then went to Alexander, ended his phone call, and told him to go to his cell.

Alexander told Bell to not disrespect him but still walked towards his cell.  Bell then ordered Alexander to provide his identification card so that he could write a disciplinary report.  Before Alexander had an opportunity to comply with Bell's order, Bell put his hand in Alexander's front shirt pocket to retrieve Alexander's ID.  Alexander turned away from Bell and pushed him away.  Bell then wrapped his arms around Alexander's neck and shoulder and conducted a "takedown maneuver."  Bell took Alexander onto a mattress on the ground and choked him.  On the mattress, Alexander continued to resist until Bell gained control of Alexander's left arm and placed it behind his back.  Bell then handcuffed Alexander and escorted him to the nurse's office.  The nurse did not observe any injuries, and Alexander's x-rays did not reveal spinal fractures or abnormalities, but he did report pain in his neck, back, and arm.

Alexander sued Bell, alleging excessive force in violation of 42 U.S.C. § 1983.  Bell moved for summary judgment, asserting that he was entitled to qualified immunity because his force was objectively reasonable, and he did not violate Alexander's clearly established constitutional rights.  After reviewing evidence on the record—including Alexander's medical records, two videos of the incident without sound, as well as depositions and affidavits from Alexander, Bell, and numerous others employed and incarcerated at the jail—the district court found that Bell is entitled to qualified immunity and granted his summary judgment motion.

II.

"We review *de novo* a district court's disposition of a summary judgment motion based on qualified immunity, applying the same legal standards as the district court." *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003). Summary judgment is appropriate when the record evidence shows "that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the district court must draw all reasonable inferences in favor of the nonmoving party and may not weigh the evidence or make credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

"To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his [] discretionary authority when the challenged action occurred." *Patel v. City of Madison*, 959 F.3d 1330, 1338 (11th Cir. 2020). If an officer makes this showing, the burden shifts to the plaintiff "to demonstrate that qualified immunity is inappropriate." *Id.* To do so, the plaintiff must show two things: (1) "when viewed in the light most favorable to him, a material question of fact exists about whether [the officer] violated [the plaintiff's] constitutional right to be free from the use of excessive force," and (2) that the plaintiff's "right was clearly established in light of the specific context of the case" as to have provided "fair notice" to the officer. *Id.* (quotations omitted).

Here, it is undisputed that Bell was acting within the scope of his authority. The burden then shifts to Alexander to

demonstrate that qualified immunity is inappropriate. First, we consider whether material issues of fact remain about whether Bell's actions violated Alexander's constitutional rights. We measure excessive force claims by pretrial detainees like Alexander under a Fourteenth Amendment objective reasonableness standard. *See Kingsley v. Hendrickson,* 576 U.S. 389, 391–92 (2015). To determine whether Alexander's right to be free from the use of excessive force under the Fourteenth Amendment has been violated, we consider whether the force used against him was objectively unreasonable, which is a fact-specific inquiry. *Id.* at 396–97. Non-exhaustive considerations in determining the reasonableness of force include: (1) "the relationship between the need for the use of force and the amount of force used;" (2) "the extent of the plaintiff's injury;" (3) "any effort made by the officer to temper or to limit the amount of force;" (4) "the severity of the security problem at issue;" (5) "the threat reasonably perceived by the officer;" and (6) "whether the plaintiff was actively resisting." *Id.* at 397.

The district court found all the *Kingsley* factors weighed in Bell's favor, and accordingly held that Alexander did not demonstrate a violation of his clearly established constitutional rights. After careful review, we agree that the fourth, fifth and sixth factors weigh in Bell's favor. But we find that the first, second, and third factors arguably weigh in Alexander's favor.

As for the first factor—the relationship between the need for force and the amount used—we are not convinced that Bell's force was proportional to the need presented. *See id.* The videos are not

clear as to whether Alexander was placed in a chokehold, and in a light most favorable to Alexander, we defer to his affidavit and deposition stating that he was. And while Alexander conceded that he disobeyed Bell's original order to have a seat, he was not behaving violently or aggressively towards Bell and did not threaten to harm Bell. Bell may have felt the need to use force to maintain his authority over both Alexander and the other inmates, but the extent of the force used most likely exceeded that need. The second factor—extent of injury—is less clear, but likely weighs in Alexander's favor as well. *See id.* While the nurse reported that Alexander did not report any injuries on the day of the incident, his medical records show that he repeatedly sought medical and mental health treatment related to the incident and was treated with pain medication. The third factor—efforts made by the officer to limit the amount of force—also leans slightly in Alexander's favor. *See id.* Bell could have given Alexander an opportunity to comply with his order to present his ID instead of immediately engaging in a takedown maneuver and chokehold. Because the factors weigh in both Alexander and Bell's favors, the district court erred in holding that Alexander did not demonstrate a material question of fact as to whether Bell used unreasonable force.

Concluding that material issues of fact remain about whether Bell's conduct violated Alexander's Fourteenth Amendment rights, we consider whether the law clearly forbade Bell's actions at the time he took them. *See Patel*, 959 F.3d at 1338. To meet his burden, Alexander must identify relevant, concrete, and factually defined precedent which would make it "obvious" to

reasonable government actors in Bell's place that their actions violated federal law. *Id.* Essentially, we consider whether Bell was put on notice that his conduct was unlawful. Alexander cited *Popham v. City of Kennesaw*, 820 F.2d 1570 (11th Cir. 1987), to assert that Bell was on notice that his actions would constitute excessive force in violation of clearly established law. In *Popham*, we held that a reasonable jury could have concluded that the officer there used excessive force when he choked the plaintiff unnecessarily. 820 F.2d at 1576–77. Despite this factual similarity, *Popham* is not sufficiently on point. We did not decide there whether the officer was entitled to qualified immunity; we only examined the jury's verdict, which is where the language of qualified immunity came into play. *See id.* at 1574. Thus, the cases are not sufficiently analogous to clearly establish a constitutional right here. Further, research has not revealed any case law from the Florida Supreme Court, this court, or the U.S. Supreme Court which put Bell on notice that his conduct was unlawful. Therefore, the district court did not err in finding that Bell was entitled to qualified immunity and granting his motion for summary judgment.

**AFFIRMED.**