**Maximo AVILA, Plaintiff,**

v.

**The COCA–COLA COMPANY, a Delaware Corporation, Registered to do Business in the State of Florida, Defendant.**

**No. 82–352–Civ–Orl–19.**

United States District Court,
M.D. Florida,
Orlando Division.

Oct. 2, 1989.

**686**

Robert E. Weisberg, David M. Lipman, Miami, Fla., for plaintiff.

Thomas C. Garwood, Jr., Susan K. McKenna, Orlando, Fla., for defendant.

## OPINION ON REMAND

WALTER E. HOFFMAN, Senior District Judge, Sitting by Designation.

This case, having been decided by the United States Court of Appeals for the Eleventh Circuit, *see* 849 F.2d 511 (11th Cir.1988), on July 12, 1988, is now before the District Court following remand. By its judgment issued as a mandate on August 3, 1988, the judgment of the District Court was AFFIRMED in part, REVERSED in part, and REMANDED to the District Court "for further proceedings in accordance with the opinion of this Court." Additionally, the judgment issued as a mandate provided:

1. The plaintiff urges that the District Court should now totally disregard Chief Judge Roney's concurring opinion. Plaintiff cites no authority to support this argument. The point is utterly frivolous as it is an acknowledged fact that courts, in writing opinions, will frequently refer to concurrences and even dissents. Chief Judge Roney did not disagree with the majority as to the remand but he definitely cautioned any reviewing court that the remand was not to be construed as calling for an increase in attorneys' fees.

2. While plaintiff's attorneys now urge that the District Court allow the *increased* hourly rate fees be made applicable to the services performed prior to February 7, 1984, their position on this point has changed considerably since September 10, 1984 where, at page 29 of Plaintiff's Memorandum of Points and Authorities in Support of Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, Mr. Lipman had this to say:

> While counsel's current billing rates for litigation of this nature is $150 hour/Lipman and $120 hour/Weisberg we request a fee award based upon the following rates:

It is further ordered that each party bear their own costs on appeal.

The opinion was authored by Circuit Judge Tjoflat, with Chief Judge Roney and visiting District Judge U.W. Clemon of the Northern District of Alabama comprising the panel. Chief Circuit Judge Roney filed a special concurring opinion.[1]

While it is a bit difficult to determine precisely what the appellate court now wants by way of remand, about all that this Court believes to be necessary is a finding as to how many hours, if any, were devoted to the retaliation issue prior to February 7, 1984.

### I.

Plaintiff now seeks, in addition to the $16,395.00 in attorneys' fees and $1,311.54 in expenses which Coca–Cola paid to counsel for plaintiff as early as November 7, 1985, the further sum of $45,852.00 as attorneys' fees and the further sum of $2,963.25 for litigation expenses. In the interim period, since the payment of fees and expenses on November 7, 1985, Messrs. Lipman and Weisberg have increased their hourly rates,[2] with Weisberg going from $100.00 per hour to $150.00 per hour, and Lipman going from $120.00 per

| Attorney | Hourly Rate |
|---|---|
| Robert E. Weisberg | $100 |
| David M. Lipman | $120 |

In its fee award opinion filed February 1, 1985, the hourly rate was granted as requested by plaintiff's attorneys for all hours on and after February 7, 1984.

In September 1984, the billing rate was *then* represented to be $150.00 per hour (Lipman) and $120.00 per hour (Weisberg). By that date all of the services involving the retaliation claim had been fully performed, yet the attorneys were only claiming $100.00 per hour (Weisberg) and $120.00 per hour (Lipman).

In plaintiff's Memorandum in support of the claim for attorneys' fees for retaliation on the present remand, filed September 20, 1988, plaintiff's attorneys represent (p. 19) that "These hourly rates have been Plaintiff's attorneys effective hourly rate since November 1, 1986." Thus, in September 1984, they were $150 and $120 per hour until November 1, 1986 when they were increased to $175 and $150 per hour respectively. Nevertheless, in September 1984, plaintiff's attorneys were willing to accept $120 and $100 per hour respectively.

hour to $175.00 per hour. They cite authority for the Court to consider the delay in the receipt of payment to counsel and suggest that inflation should be considered. The appropriateness of a delay in payment adjustment in insuring a reasonable fee award for plaintiff counsel's activities would, according to Lipman and Weisberg, go back to July 30, 1981, but this suggestion is clearly unreasonable as the action was not filed until July, 1982. The date of July 30, 1981, is the date of Avila's first conference with Weisberg. This goes a bit too far in requiring payment in advance. They point out that their initial motion and memorandum for attorneys' fees was filed on September 20, 1984. They would have this Court revise the award of attorneys'. fees and litigation expense to make the revised Lipman/Weisberg hourly rates retroactive. What plaintiff's counsel fails to point out or otherwise intimate is that, by letter dated November 7, 1985, counsel for Coca-Cola forwarded to Mr. Weisberg three checks;[3] two of which were for back pay, less withholding taxes, interest on the back pay at 12 percent per annum, and, finally, a third check payable to Weisberg in the sum of $17,706.54 covering attorneys' fees of $16,395.00 and litigation expense of $1,311.54.

It is at least interesting to note that plaintiff's attorneys registered no complaint to the immediate payment of the attorneys' fees on November 7, 1985. Rather than there being any delay in payment of fees, the fees were paid prior to the resolution of the promotion issue and prior to the entry of the final judgment order. Indeed, it is a fair subject of inquiry as to whether attorneys receiving in full the fees allowed by the Court, and reserving no objection to that phase of the matter, should now be heard on any issue of retroactive fees.

The major problem is that plaintiff now requests this District Court to determine the hours and hourly rate for the time spent handling the appeal. Plaintiff's counsel do not contend that they expended any time on the retaliation issue, except for perfecting plaintiff's appeal, which resulted in the present remand proceedings, from the date of the payment by Coca-Cola on November 7, 1985 until the date of the filing of the notice of appeal on December 18, 1986, following the entry of the final judgment on November 28, 1986. Without attempting to state whether the hours were required prior to or after February 7, 1984, Weisberg now claims 205.93 hours at $150.00 per hour, and Lipman claims 85.50 hours at $175.00 per hour. Messrs. Weisberg and Lipman, in their motion filed on September 20, 1988, state that those hours and rates are for "attorney fees and expenses incurred prior to February 7, 1984 in connection with the retaliation claim, *and in connection with the prosecution of the appeal.*"

Plaintiff's counsel has failed to breakdown the time spent on the appeal as contrasted with the retaliation issue. According to the computation later referred to herein, it appears that Weisberg has spent 18 hours on the remand proceedings, and Lipman claims 4½ hours on remand. Thus, at the present prevailing hourly rate, Coca-Cola is to be charged, according to plain-

**3.** What prompted the payments made by the letter of November 7, 1985 is due to a civil contempt fine of $2,000.00 imposed by this Court on Coca-Cola. As the record discloses, the order of July 27, 1984 required Coca-Cola to appoint a Promotion Board to determine Avila's eligibility and qualifications for a promotion. No action was ever taken by Coca-Cola or its counsel. After March 1, 1985 which was the deadline for the Promotion Board to report to the Court, plaintiff's counsel filed appropriate pleadings calling the default to the attention of the Court. This resulted in the contempt fine of $2,000, plus attorneys' fees in an unspecified amount, by an order filed on July 9, 1985. Counsel for plaintiff and defendant then appar-

ently conferred and no hourly rates or time were ever submitted to the Court as counsel merely advised the Court that the attorneys' fees for the proceedings resulting in a fine of $2,000 had been fully satisfied. The Court cannot, therefore, advise the amount that plaintiff's counsel received, and whether it was paid by Coca-Cola or its Orlando counsel. Since the civil contempt fine was paid by the Orlando counsel's check on July 25, 1985, it is possible that all of the default of Coca-Cola may have been due to the fact that Coca-Cola never received the order filed July 27, 1984 until July 1985. In any event, plaintiff's counsel either received or waived the additional attorneys' fees referred to in the order of July 9, 1985.

tiff's counsel, with $2,700.00 for Weisberg's services and $787.50 for Lipman's services, confined *solely to the present remand.* And the hours continue—we must wonder whether the administration of justice is devised to serve the litigants or the attorneys.

Aside from the foregoing, this Court cannot read the *Avila* opinion as any indication that plaintiff was the prevailing party *on appeal;* [4] that the appellate court ever intimated or suggested that the District Court, on remand, should give any consideration to counsel fees for appellate purposes; and that the judgment issued as a mandate did anything other than to say that each party should pay its own costs, all of which is contrary to the prevailing party rule and which mandate is now being violated by counsel for plaintiff. Rule 39(a), Fed.R. App.P., mandates, in this case, that the Court of Appeals direct how the costs shall be assessed. The statute under which an attorneys' fee is allowed by the District Court, 42 U.S.C. § 1988, specifically provides that attorneys' fees are a part of the costs allowable to the prevailing party.

At the very best this is a limited remand and, in the absence of express direction by the Court of Appeals, there will be no extended discussion of the hours and hourly rate expended by counsel for plaintiff for appellate purposes. Courts of Appeal have allowed attorneys' fees for appellate purposes, when the appeal is frivolous, *Crockett v. State Farm Fire and Casualty Co.,* 849 F.2d 1369 (11th Cir.1988), but unless the appellate court expressly directs the District court to handle the matter on remand, such fees are fixed by the panel or the Clerk, and do not go back to the District Court.

To hold otherwise would result in endless litigation with a never-ending final decision. Judges are already trying all Civil Rights cases at least twice, once on the merits and once on attorneys' fees. Assuredly, there must be some end to this type of litigation.

## II.

The remand Court is being called upon to determine whether any of counsel's work prior to February 7, 1984, was essential to the retaliation claim. The majority opinion points out that it was necessary for Avila "to file a complaint in the first place" before the retaliation claim could form any basis for a complaint. This rather amazing statement encourages attorneys to file frivolous complaints and then, if the wheel of fortune stops on any number, no matter how small and how insignificant, counsel fees may be appropriately claimed. The fact that counsel are being paid for the second amended complaint, as in this case, appears to be of no consequence to counsel.

The majority opinion acknowledges that "an exact allocation is impossible," and that the Court must have considerable discretion in making its determination. Hunting for the needle in the haystack, this Court will attempt to review the pleadings and evidence and will start with the complaint.

### The Complaint

The original complaint, as filed on July 14, 1982, seeks declaratory and injunctive relief under the Civil Rights Act, 1964, and the Civil Rights Act of 1866. It alleges

---

**4.** It is true that the majority opinion states that "This appeal concerns solely the issues of attorneys' fees." The District Court was specifically *affirmed* on the issue as to whether attorneys' fees should be limited to the retaliation claim, although "Avila's attorneys contend that they are entitled to fees for the unsuccessful national origins claim." It is, indeed, difficult to say that plaintiff was a prevailing party when fees for the national origin claim were disallowed. However, the recent case of *Texas State Teachers Association v. Garland Independent School District,* — U.S. ——, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), may throw some light on the subject. In that case the Supreme Court rejected the "central issue" test advocated by the Fifth and Eleventh Circuits, and substituted a standard requiring that the parties "succeed on any significant issue in the litigation which achieves some of the benefit [they] sought in bringing the suit." Since the district court in *Avila* permitted the post-trial amendment of the complaint to include the retaliation issue, this meant that Avila became a "prevailing party" on the district court level, and the Court so held, but this does not make Avila a "prevailing party" on the discrimination claim, nor does it make him the prevailing party on appeal in merely securing a remand.

national origin discrimination based upon (1) failure to promote, (2) failure to pay on the same basis as Caucasian employees, (3) failure to provide equal training opportunities, and (4) harassment, intimidation and spurious evaluations. It alleges the basic jurisdictional requirements, including the filing of his administrative claim of discrimination with the EEOC on December 18, 1980, and the receipt of a "Right-to-Sue" letter on May 11, 1982. It names plaintiff's supervisors, "Cahill, Kloofer [sic], and Heath" as those being guilty of discriminatory acts. In addition to a declaration that Coca–Cola's practices violated Avila's rights, plaintiff sought (1) back pay and (2) promotion to which Avila would have been entitled but for unlawful discrimination, including an injunction.

At no point in the complaint or first amended complaint is there any word suggesting any retaliation on the part of Coca–Cola. Of course, attorneys' fees and costs were requested.

The retaliation had, in fact, occurred on December 28, 1981, at which time Vice President Truitt blocked any further raise in pay for Avila, which act was contrary to the recommendation of Heath, the supervisor. Presumably, at the time of the filing of the complaint, plaintiff's counsel did not know of any retaliation, although plaintiff may have known because of what Cahill, his ultimate supervisor, told him.

### The Answer

Coca–Cola answered the complaint on August 10, 1982. The answer admits the employment of Avila, giving specific dates as to his steps of promotion. All of the pertinent allegations of discrimination are denied.

### Discovery

The parties took the following actions by way of discovery:

(A) August 20, 1982—Plaintiff (Weisberg) filed a request for the production and inspection of documents, including (1) personnel records for 13 employees, (2) job descriptions, (3) organization charts, (4) manuals and procedures relating to hiring, promotion, transfer, discipline, termination, evaluation, discharge and compensation, (5) affirmative action plans, (6) all EEO reports, (7) a list of all applications for employment since January 1, 1976, and (8) all documents reflecting employee training in the Engineering Department.

To this moment there is no suggestion of retaliation.

(B) Interrogatories were apparently propounded by the plaintiff and defendant. These interrogatories are not in the file wrapper but are set forth in the answers. They carry no suggestion of retaliation.

(C) On October 5, 1982, Coca–Cola responded to plaintiff's first request for the production of documents stating that all documents had been produced on October 1, 1982, but noting objections to certain requests. The defendant also answered the first set of interrogatories. A review of these discovery processes reveals that nothing of consequence would be material to an action for retaliation. In the pretrial stipulation, filed December 30, 1982, plaintiff stated that his claim of discrimination was "in the following ways: (i) Defendant's failure and refusal to promote him while less qualified and less experienced non-Hispanics were promoted or hired from outside Defendant's work force for these higher classified positions; (ii) Defendant's failure to compensate him [Avila] on the same basis as similarly situated non-Hispanic employees; (iii) Defendant's failure to provide him [Avila] equal training opportunities and (iv) subjecting him [Avila] to unwarranted harassment, intimidation and spurious evaluations."

The closest point approaching retaliation is the explanation under (ii) above—the failure to compensate Avila for the years 1980, 1981 or 1982 where, the pretrial stipulation says, in part:

> Mr. Avila was singled out in the Engineering Department to receive no salary increase in 1980, 1981 or 1982. Other non-Hispanic employees received at least one salary increase in each of those years as well as in all preceding years of their employment.

The parties stipulated facts regarding Defendant's employees (including Avila)

690

that were employed in the Engineering Department since 1972, namely, the date the employment commenced, the national origin of the employee, the salary at the date the employee was hired, the history of the pay increases received by each employee, all positions held by the employee while working for Coca–Cola, the employee's education, and the changes in status/promotion received by each employee.

The foregoing demonstrates the ease by which the plaintiff's counsel obtained the records in the foregoing paragraph. Indeed, essentially all that plaintiff was required to prove to sustain the back pay claim for the pertinent years was the rate of Avila's pay, that his national origin was the motivating reason for Coca–Cola's actions, and the amounts paid by increases to other employees during the pertinent years, although counsel later agreed that the average increase was four percent.

The first complaint filed by plaintiff was on July 14, 1982. This was met by a motion for partial summary judgment on the ground that 42 U.S.S. § 1981 does not encompass discrimination based *solely* on national origin. This motion was granted on March 29, 1983 by order of former District Judge John A. Reed. Plaintiff's counsel now concede that they are not entitled to fees on the summary judgment motion, although Weisberg, perhaps inadvertently, claimed two hours on March 23, 1983, in the *original* billing, for "Preparation for hearing on Defendant's Motion for Summary Judgment." The complaint was amended on April 11, 1983 and answered by Coca–Cola on April 14, 1983. Once again, neither the amended complaint nor the answer to the amended complaint suggested any form or issue of retaliation.

On January 12, 1984, Judge Reed entered an order closing discovery and approving the prior pretrial stipulation and stating that it "shall control the course of the trial." However, on January 23, 1984, plaintiff filed an amendment to the pretrial stipulation adding certain witnesses and exhibits, but still not reflecting any issue of retaliation. A few days prior thereto, on January 16, 1984, defendant had added the name of George Truitt to its witness list.

On February 6, 1984, plaintiff voluntarily filed a pretrial memorandum (11 pages). This filing was on the day the case commenced. Even as late as that date, there is nothing stated therein which may have suggested that plaintiff or his counsel had any knowledge as to the existence of a claim for retaliation which, when proven, almost automatically supported the back pay remedy for the four years ultimately awarded by the Court. While we speak of "back-pay," this is a misnomer as the award was for damages occasioned by the retaliation. Thus, what was necessary to prove any charge of retaliation differs substantially from the equitable remedy for violation of the retaliation statute, 42 U.S.C. § 2000e–3.

Counsel for the plaintiff, and perhaps to some extent the appellate court, are laboring under the impression that discrimination and retaliation are based on related legal theories, and the use of the word "probative" in *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126 (11th Cir.1984), makes all evidence interrelated and thus to be considered for attorneys' fee purposes. If that is the law, *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), can be considered of no effect and must be disregarded. Counsel for plaintiff emphasize the use of the word "probative" by Judge Wisdom in *Carmichael,* where he stated:

> In the present case, the plaintiff had to develop fully the facts concerning his employment for the court to be able to evaluate his contentions; thus, even if only the wage claim were ultimately successful, the time spent developing facts concerning the hiring and promotion claims would be compensable if those facts were also *probative* on the wage claim.

*Carmichael* is entirely different from the factual situation regarding the retaliation issue in the instant case. The only facts of "probative" value in *Avila* are (1) was Avila employed by Coca–Cola, (2) if so, what was his pay, (3) how were Coca–Cola's em-

ployees in the Engineering Department evaluated, and (4) what was the resulting effect of a failure to evaluate? Except for the last item, there was complete agreement on the remaining factors and they were never in controversy. There are, therefore, limitations on the use of the word "probative."

## III.

### DISCRIMINATION v. RETALIATION

The opinion of the Court of Appeals holds that the unsuccessful discrimination claims involving promotion and merit increases are "related" to the successful charge of retaliation for the purposes of determining the attorney fees award, citing *Popham v. City of Kennesaw*, 820 F.2d 1570 (11th Cir.1987).

As noted, the original complaint sought relief under 42 U.S.C. § 2000e–2(a) which reads:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

Thus, to recover under 42 U.S.C. § 2000e–2(a), a plaintiff must show unlawful discrimination by reason of race, color, religion, sex, or national origin. Discrimination alone is not sufficient. It must be *unlawful* discrimination expressly prohibited. In this case the District Court found, and the Court of Appeals agreed, that there was "no shred of evidence" showing *unlawful* discrimination under any of the foregoing categories.

The recovery for the plaintiff which justified his merit increases by way of damages was grounded *solely* on 42 U.S.C. § 2000e–3, reading as follows:

(a) It shall be an unlawful employment practice for an *employer to discriminate against any of his employees* or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or *because he had made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter* (Emphasis supplied).

It was predicated upon the allegations of the second amended complaint that Avila's recovery was grounded. The factors involving national origin, race, religion, color, or sex are not required to be proven in a retaliation case—the only requirement is that a charge was made by Avila and that Coca–Cola thereafter unlawfully discriminated against Avila because he made the EEOC charge. Thus, § 2000e–3(a) has incorporated by reference § 2000e–2(a)(1). *Silver v. KCA, Inc.*, 586 F.2d 138, 142 (9th Cir.1978). *Silver* refers to two "distinct unlawful employment practices" (discrimination on the ground of race, and retaliatory discrimination), "whose standards necessarily do differ." Avila's action in bringing charges against Coca–Cola is not a violation of 42 U.S.C. § 1981, but is protected only by reason of § 2000e–3(a).

It therefore appears clear that Avila would not have recovered anything, nor would the attorneys be entitled to any attorneys' fees, but for the retaliation claim under § 2000e–3(a). It was at the suggestion of the Court that plaintiff's counsel finally requested leave to file a second amended complaint adding a count of retaliation under 42 U.S.C. § 2000e–3. It was at this moment that attorneys' fees became potentially possible. Prior to that moment, the prospects of back pay or promotion were essentially nil as there never was any evidence of unlawful discrimination by reason of the factors named in the statute. Thus, there may be discrimination in many situations, but this does not assure a cause of action against the party doing

the discriminating *unless* it is for reasons of race, color, religion, sex, or national origin.

Retaliation is, in effect, a discriminatory act, but the statute making it an unlawful employment practice to retaliate does not require that the discrimination be for the reason of race, color, religion, sex, or national origin. A person may file a perfectly frivolous charge with the EEOC but, if he is then the subject of retaliation, he has a cause of action under 42 U.S.C. § 2000e–3(a). This demonstrates that the claims are separate and distinct and not subject to the argument that evidence discovered in investigating an unsuccessful claim may constitute a basis for recovery of attorneys' fees in considering the successful claim. It is true that the *remedies* for a retaliation claim frequently involve, as in this case, a back pay claim to the same effect as if the party had been the subject of unlawful discrimination.

The original and first amended complaints filed by plaintiff's counsel allege that Avila was the subject of discrimination from 1974 until at least the date the action was filed on July 14, 1982. Since there was "no shred of national origin" discrimination, this Court discussed only 1980, 1981, 1982 and 1983 and then only on the retaliation issue which came to light during the course of trial and was the subject of the second amended complaint.

This leads us to a further consideration of *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and the more recent pronouncement of the Supreme Court in *Texas State Teachers Association v. Garland Independent School District,* — U.S. ——, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989 in an opinion authored by Justice O'Connor). As Justice Powell stated in *Hensley,* "It remains for the district court to determine what fee is 'reasonable.'" He asserts that the starting point for determining a "reasonable" fee is the number of hours "reasonably" expended on the litigation, multiplied by a "reasonable" hourly rate, and the burden is on the attorney seeking the award of fees to submit evidence supporting the hours worked. It

admonishes counsel seeking the award to make a good-faith effort to exclude from any fee request hours that are excessive, redundant, or otherwise unnecessary. Justice Powell then turns to the critical factor of "results obtained," an element in this case in which plaintiff's counsel fell flat on their faces as there was "no shred of discrimination by reason of national origin." The opinion recognizes that "a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories." On this subject the opinion states:

> In such a suit, even where the claims are brought against the same defendants— often an institution and its officers, as in this case—counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved."

The Court held that unrelated claims must be treated as if they had been raised in separate lawsuits and, therefore, no fee could be awarded for services on the unsuccessful claim. *Hensley* further says:

> Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

Nor has this remand Court ever criticized Avila or his counsel for filing an action, especially since Avila had not received a merit increase when essentially all other employees in the Engineering Department had been the recipients of such increases. Something obviously was wrong and the resulting trial brought forth the retaliation by Vice President Truitt which almost automatically should have ended the case.

Under footnote 12 in *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941, the Supreme Court approved a quotation from *Nadeau v. Helgemoe,* 581 F.2d 275, 279 (1st Cir. 1978), reading:

> As for the future, we would not view with sympathy any claim that a district

court abused its discretion in awarding unreasonably low attorney's fees in a suit in which plaintiffs were only partially successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims.

Unfortunately, except for the hours which plaintiff's counsel now estimate were spent on the retaliation claim, which hours differ very little as to the nature of the work performed from that as stated in the original fee request which did not segregate the work done on a successful claim (retaliation) from that done on the unsuccessful claims (discrimination in pay and discrimination in failure to promote), we have nothing to rely upon except guesswork. Assuredly, the extent of Avila's success is a crucial factor in determining the proper amount of an award of attorney's fees, *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943. Again quoting from Justice Powell's opinion (p. 440, 103 S.Ct. p. 1943), we find:

> Where plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, *the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee* (Emphasis supplied).

The opinion by Judge Tjoflat in the Avila case does not discuss whether the retaliation claim is distinct from the discrimination claims, but it does hold that the claims are "related" for purposes of determining the attorney fees award, citing *Popham v. City of Kennesaw*, 820 F.2d 1570, 1579

(11th Cir.1987). *Popham* is a well-reasoned opinion and touches most of the problems in the instant case. Factually, there is a great difference which would more obviously justify a finding of "a common core of facts" which were "based on related legal theories." [5] The instant case on the fee issue was decided in February, 1985, whereas *Popham* appeared about two and one-half years later. There, as Judge Johnson suggests, after the lodestar has been determined, the Court may reduce the lodestar to reflect the plaintiff's partial success, but "if the claims on which he did prevail were 'distinctly different claims ... based on different facts and legal theories' the court cannot award any fee for services on the unsuccessful claim." *Popham*, at 1578; *Hensley*, 461 U.S. at 434, 435, 103 S.Ct. at 1939, 1940.

This is the problem which confronted the court when it granted the interim fee to counsel for plaintiff in February, 1985. Plaintiff had not been successful to any extent in establishing discrimination based upon national origin, yet, on the other hand, plaintiff had established a strong case for a separate and distinct cause of action for unlawful retaliation. By granting leave to amend the complaint, even after all evidence on the back-pay claim had been introduced, it made the plaintiff the "prevailing party" as to the third count of the second amended complaint, which count charged retaliation under 42 U.S.C. § 2000e–3(a).[6]

---

5. *Popham* involved a factual situation where two police officers were sued under 42 U.S.C. § 1983 for (1) false arrest, (2) inflicting cruel and unusual punishment, (3) battery, (4) malicious prosecution, and (5) negligent training of officers. Plaintiff prevailed only on the excessive force claim, obtaining a jury verdict for $30,000.00. Popham had attended an open "Meet the Candidates" forum. Popham obtained permission to speak from the forum moderator and proceeded to criticize the Mayor (whom Popham had opposed the previous year). The moderator ruled Popham out of order as not being on the forum's agenda, but these efforts were to no avail despite the moderator's efforts to gavel him down. Finally, Popham was arrested and, when he became involved in an altercation with the arresting officer, Ruble, other officers came to Ruble's assistance and were involved in the fighting. Popham was

acquitted on charges of disturbing the peace, resisting arrest, and battery. He then sued four officers and the City.

6. As this Court now, in hindsight, looks upon the facts in this case, it seems rather apparent that counsel for both Avila and Coca–Cola did not realize the legal effect of the Truitt notation which effectively blocked any future merit increase and/or promotion for Avila, and which established a clear case of retaliation under 42 U.S.C. § 2000e–3(a). At the conclusion of the evidence on February 7, 1984, and prior to hearing Coca–Cola's motion to dismiss, the Court expressed its concern about the total lack of evidence of discrimination by reason of national origin, the failure to file a retaliation charge with the EEOC, and total absence of any retaliation charge in either of the previously

## IV.

## DUPLICATION OF EFFORT—UNNECESSARY

■ This Court was presented with the request for an allowance of attorneys' fees and costs in September, 1984, which finally resulted in a memorandum (11 pages), dated and filed on February 1, 1985, awarding attorneys' fees and costs. In their first request counsel for plaintiff (David Lipman and Robert Weisberg) requested $39,830.00 in attorneys' fees and $7,990.03 in costs. As indicated, the aggregate attorneys' fees allowed were $16,395.00. Costs were ordered paid by Coca–Cola only to the extent of $1,311.54. Because Coca–Cola did not oppose the number of hours expended, nor the hourly rate for services rendered, the Court adopted the hourly rates and, to the extent that the hours consumed included an allowance for both successful and unsuccessful claims, the Court accepted the time calculation with Lipman submitting 60.5 hours and Weisberg 325.7 hours. But under the then recently decided case of *Hensley v. Eckerhart, supra,* the Court felt obliged to give little or no consideration to the hours expended prior to the raising of the retaliation issue on the first day of trial.[7]

Only Weisberg was in attendance at the trial of this case on February 6–7, 1984, although it is believed that Lipman was present during at least a portion of the second trial day even though the transcript does not reveal any participation by Lipman on these days. The case itself was admittedly not complex although it has become rather involved in an effort to determine what hours were expended by counsel

filed complaints. When plaintiff's counsel was requested to furnish authority as to how and why the case should remain in court, Mr. Weisberg replied (TR. Vol. 6, p. 172):

> To be absolutely candid and honest with this Court, a lot of evidence that came out in the past two days regarding the conspiracy and retaliation against Mr. Avila we learned about the same time the Court learned about it. And because of that, Your Honor, I can't cite any cases at this point, but I'd like to be able to file a legal Memorandum with this Court.

After Coca–Cola renewed its motion to dismiss, Mr. Weisberg (TR. Vol. 6, p. 174), for the first time in the case, said:

> Let me make a Motion pursuant to Rule 15(b) that an amendment be made to the pleadings to conform to the evidence that's been educed.

Subsequently, a further hearing was conducted on February 15, 1984 because counsel for plaintiff had discovered the case of *Gupta v. East Texas State Univ.,* 654 F.2d 411 (5th Cir., Unit A, Aug. 1981), referred to in footnote 2 of Judge Tjoflat's opinion in this case. At this hearing the matter resolved itself into a question of whether Coca–Cola would be prejudiced by the granting of an amendment alleging retaliation. Counsel for Coca–Cola, contending that retaliation was never before the Court, said (TR., Hearing 2–15–84, p. 6):

> It caught our client completely by surprise.
> THE COURT: Both of you by surprise.

With the expertise that Messrs. Lipman and Weisberg profess to have in the trial of Civil Rights cases, it is indeed difficult to believe that they would not realize that they had a "smoking gun" in their possession when they saw the Truitt notation on Avila's employment record, which apparently was delivered to plaintiff's counsel during the early phases of discovery. It appears that the fact of Truitt's action was mentioned in Weisberg's opening statement but, since there was some objection to the introduction of evidence at that time, the Court did not examine an exhibit which contained the precise wording of Truitt. Nor did plaintiff attempt, in his case-in-chief, to introduce or read the Truitt writing. Counsel for plaintiff are correct in asserting that Truitt testified as the final witness on Monday afternoon, February 6, 1984, although Truitt was called as a witness for the defendant (TR. Vol. 6, p. 3).

Presumably, Weisberg and Lipman, felt that Truitt's retaliation could be introduced to support the issue of intent on the discrimination charge, and the Court concedes that such evidence would be admissible for that limited purpose, but without any proof of discrimination *by reason of national origin,* it would serve no purpose by way of assistance to Avila. Thus, the Court concludes that counsel were not familiar with the provisions of 42 U.S.C.A. § 2000e–3(a), which establishes a separate and distinct cause of action for retaliation without regard to the existence or nonexistence of discrimination.

7. The Court erroneously stated that the retaliation issue first came to light on February 7, 1984, the second day of trial. This was in error. Plaintiff had presented his case-in-chief, and defendant presented as its first witness, George W. Truitt, Vice President of Coca–Cola Foods Division, who was cross-examined by Avila's counsel and the Court on the retaliation issue. Truitt was the final witness on February 6, 1984. The Court's minor error is due to the fact that the transcripts had been returned to Orlando and the Court did not refer to same in its opinion on fees.

for plaintiff which may have been of assistance to the proof of the retaliation issue. The presence of two partners with presently substantial hourly rates for their services raises the interesting question as to whether 42 U.S.C. § 1988 was ever intended to compensate two partners in a relatively simple case, or whether only one fee should be considered as necessary in such a simple case. The Eleventh Circuit has at least partially disposed of this issue in *Johnson v. University College,* 706 F.2d 1205, 1208 (11th Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983), saying:

> The use in *involved* litigation of a team of attorneys *who divide up the work* is common for both plaintiff and defense work.
>
> (A) reduction is warranted only if the attorneys are *unreasonably doing the same work* (Emphasis supplied).

*Jean v. Nelson,* 863 F.2d 759, 772, 773 (11th Cir.1988).

This Court was aware of the authorities with respect to attorneys' fees, including the importance of a lodestar and the reductions or additions to same, but has never entertained the belief that these mathematical computations were to be relied upon as a final answer. The Supreme Court has held that the "reasonable fee" may be more or less than the lodestar computation. What everyone is desirous of obtaining, and what appears to be the bottom line, is the question as to what constitutes a "reasonable fee" under all of the circumstances. Justice Powell, in *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939, has said:

> Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.

When the Court reviewed the Schedule of Hours listed by each attorney, Weisberg and Lipman, filed on September 10, 1984, it became apparent that plaintiff's attorneys were making no attempt to confine their claim to work affecting the retaliation issue, but were indeed seeking compensation for the discrimination claims and the motion for summary judgment, in which last pleading they now admit a fee should not have been claimed. When contrasted with the Appendix Exhibit filed by counsel for plaintiff on September 20, 1988, the fee requests show an obvious duplication of effort in that the two attorneys were unreasonably doing the same work, only they alter the wording of their notations. This was apparent also from the Schedule of Hours filed by Weisberg and Lipman in 1984. This Court, realizing that counsel for plaintiff had overlooked the importance of the retaliation issue, and having literally urged plaintiff's counsel to request leave to file an amended complaint under Rule 15(b), concluded that it would be the better part of wisdom to delete all hours expended prior to February 7, 1984, and limit the attorneys' fees to the hours affecting the retaliation issue. Now that counsel for plaintiff and the appellate court suggest that the district court redetermine the hours, and attempt to ascertain the hours prior to February 7, 1984 which may have been related to the retaliation issue, it requires a more complete review and, reluctantly, may be offensive to the attorneys.

The unnecessary duplication of effort may be demonstrated by the dates of August 31, 1984; September 1, 1984, and September 2, 1984, in their presentation of "Fees for Fees." Out of his total of 60.5 hours expended on the entire case, Lipman had 16 hours charged to "Fees for Fees" over a period of three days. Weisberg, charging only two days to "Fees for Fees," had a total of 8.0 hours. Thus, 24 hours are charged to the client or the party to be held liable for the attorneys' fees. It is interesting to see the description of this particular work, as follows:

### *Lipman*

8–31–84—Research, preparation and drafting of Plaintiff's Memorandum of Points and Authority in Support of Motion for an Award of Attorneys Fees and Litigation Expenses.

9–01–84—Research, preparation and drafting of Plaintiff's Memorandum of Points and Authority in Support of Motion for an Award of Attorney Fees and Litigation Expenses.

9–02–84—Research, preparation and drafting of Plaintiff's Memorandum of Points and Authority in Support of Motion for an Award of Attorney Fees and Litigation Expenses.

The foregoing accounts for 16 hours at $120.00 per hour (now proposed by plaintiff's counsel to be increased retroactively to $175.00 per hour). Weisberg's entries for his two days, or a total of 8 hours at $100.00 per hour (now proposed by plaintiff's counsel to be increased retroactively to $150.00 per hour), are *identical* to the entries made by Lipman. If it requires the services of two partners, who claim vast expertise in handling Civil Rights cases, a total of 24 hours of continuous work to make up a bill for services rendered, it is little wonder that the public has lost confidence in the legal profession. Just the cost of making up the bill and counsel's brief in support of same, aggregates—according to what plaintiff's counsel now are requesting—the sum of $4,000.00 and, as of September, 1984, the figure aggregated $2,720.00. There appears to be a substantial inflationary reaction on the value of billing in the legal profession.

One of our primary difficulties in arriving at a conclusion as to the reasonableness of any fee has been the manner in which fee petitions were presented by Messrs. Lipman and Weisberg. In September, 1984, when they first applied for fees, they listed the hours starting with the date that Avila first conferred with Weisberg on July 30, 1981, and continuing thereafter through September 2, 1984, which involved the final day of "fees for fees" where counsel spent 24 accumulated hours preparing a bill. There was no attempt to breakdown the time expended between the retaliation issue and the other issues making up the national origin claim of discrimination. Now, after the remand, the attorneys seek to revise their rate schedule under some theory of delayed payment, and further include all hours spent on appeal to the same extent as though they had completely prevailed on the appeal. Indeed, for example, they attempt to charge the two hours of the July 30, 1981 interview with Avila (the first interview) on the basis of three-fourths of the time being spent on retaliation and only one-fourth of the time on other issues (See Appellant Exhibit supporting plaintiff's motion for attorney fees for retaliation claim, filed September 20, 1988). This is a strange allocation as Defendant's Exhibit 7 contains the Truitt memo, dated December 28, 1981 which was the retaliation. How Weisberg and Avila could discuss the retaliation issue as early as July 20, 1981, is hard to follow. Also, for example, while the original complaint never mentioned any issue of retaliation, Weisberg alleges that his 4 hours required for drafting the first complaint should be allocated so that 2.8 hours should be a reimbursable item on the retaliation issue. This is a far cry for a man who confessed ignorance of any retaliation claim on February 7, 1984 (see footnote 6) after the evidence had been completed. How one can claim nearly three-fourths of his time being spent on a retaliation issue which is not mentioned in the complaint is hard to comprehend and the remand Court cannot, and does not, accept the unsworn statement of Mr. Weisberg on these and many other items listed in the schedule. Of less importance, but equally unreliable, is Lipman's claim that he reviewed the original complaint on July 11, 1982 and, while he only spent 15 minutes for that work, he charged the entire time and amount to the retaliation issue and claims reimbursement.

The hours charged for appeal purposes are analyzed as follows:

| | Weisberg | Lipman |
|---|---|---|
| 05–08–87 | 2.50 | |
| 05–19–87 | 4.00 | |
| 05–20–87 | 3.50 | |
| 05–21–87 | 2.00 | |
| 05–22–87 | | 1.25 |
| 05–25–87 | | 3.75 (1) |
| 05–26–87 | 5.00 (1) | |
| 05–27–87 | 6.00 (1) | |
| 05–28–87 | 7.00 (1) | 11.50 (1) |
| 05–29–87 | 6.50 (1) | 12.50 (1) |
| 05–30–87 | 4.00 (1) | 7.00 (1) |
| 05–31–87 | | 10.50 (1) |

|  | Weisberg | Lipman |
|---|---|---|
| 06–01–87 | | 9.00 (1) |
| 07–22–87 | | 1.75 |
| 08–10–87 | | .25 |
| 09–29–87 | 1.50 | |
| 09–30–87 | 4.00 | |
| 10–04–87 | 8.00 | |
| 10–05–87 | 6.00 | |
| 07–14–88 | 1.50 | |
| 09–06–88 | 6.00 | |
| 09–08–88 | 4.00 | |
| 09–10–88 | 4.00 | |
| 09–12–88 | 4.00 | |
| 09–17–88 | | 2.00 |
| 09–19–88 | | 2.50 |
| TOTAL | 79.50 | 64.75 |

Note (1) on Lipman's summary covers hours expended by Lipman in essentially identical language, reading: "Research, preparation and draft of 11th Cir. Brief." Lipman, according to his summary spent 54¼ hours in preparing his client's brief on appeal. Weisberg, under note (1), spent 28½ hours under a caption entitled "Drafting Appellate Brief" or "Drafting and Editing Appellate Brief." Thus, of Lipman's total of 101.25 hours claimed to be reimbursable, 64.75 hours were for appellate purposes.

The fees continue past the remand order of the appellate court. As indicated previously, Weisberg claims 18 hours devoted to remand; Lipman claims 4½ hours.

■ The remand Court has had great difficulty in ascertaining how and why Messrs. Lipman and Weisberg conclude that they are entitled to attorneys' fees for appellate purposes, as well as attorneys' fees for remand purposes. If they are correct in their contention, then assuredly the appellate court must have erred in directing that "each party bear their own costs on appeal," as the "prevailing party" is generally entitled to recover his or her costs.

Nor can the remand Court accept the allocation of time spent on the retaliation issue with respect to counsel's conversations with the EEOC, their interviews with Avila, and the work done in discovery proceedings. As to the latter item, it is undoubtedly true that the attorneys would have to obtain from some source the amounts paid to other employees in the Engineering Department during the same period of time. Presumably, Avila was furnished a statement of his earnings on a monthly basis, but if he was not so supplied or otherwise failed to keep his earnings statements, it was readily procurable through discovery. If we were to assume that the discovery (interrogatories and request for production of documents) was chargeable, on July 30, 1982 when prepared solely to the retaliation issue, we have only 3½ hours chargeable. The attorneys now seek to charge about 2½ hours of the above-stated 3½ hours to the retaliation issue.

This Court originally allowed attorneys' fees to plaintiff's counsel at their requested rates and for all hours from February 7, 1984. The Court did this because of the lack of any objection by Coca–Cola's counsel, and the apparent work on the retaliation issue. In a review of what the Court originally allowed, while we have no quarrel with the rates then charged by Lipman and Weisberg, we do believe that we were overly generous in the number of hours allowed. For example, the following entries appear as to work performed on the retaliation issue and the Rule 15(b) issue:

|  | Weisberg | Lipman |
|---|---|---|
| April 23, 1984 | 7.0 | |
| April 24, 1984 | 5.0 | 1.75 |
| April 25, 1984 | 8.0 | |
| April 26, 1984 | .5 | |
| April 27, 1984 | 7.5 | |
| April 30, 1984 | 6.0 | |
| May 1, 1984 | 7.0 | |
| May 2, 1984 | 6.0 | |
| (Undated) | 5.0 | |
| May 4, 1984 | 10.0 | |
| May 6, 1984 | 3.0 | 1.25 |
| May 7, 1984 | 8.0 | |

With all due respect to Mr. Weisberg, the remand Court cannot believe that he spent 73 hours in preparing this post-trial brief. If the Court considers the hours on and after February 7, 1984, there will be some

reduction as to those items as well as others. But since Coca–Cola[8] has filed no cross-motion for the return of any previously paid attorneys' fees, there can be no affirmative relief afforded to Coca–Cola, irrespective of the itemization.

In considering the "time and labor" required in a given case, we turn to the leading case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)—an opinion by Judge Roney, now the Chief Judge of the Eleventh Circuit—which says (p. 717):

> Although hours claimed or spent on a case should not be the sole basis for determining a fee (citation omitted), they are a necessary ingredient to be considered. The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities. If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted. It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may

command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.

Without in any sense deprecating the services of Lipman as a second attorney in the case, it is clear to the remand Court that this case was not complex and that "the services of no more than a single attorney were reasonably necessary in order to litigate this case to a successful conclusion for the plaintiff."[9] *Hart v. Walker*, 720 F.2d 1436 (5th Cir.1983).

Messrs. Lipman and Weisberg are no strangers to the double-billing for essentially the same services performed by each partner. They cite the case of *Delagall, et al. v. Okeechobee County School Board, Florida, et al.*, an order entered by Judge Edward B. Davis of the Southern District of Florida in No. 81–8170–CIV–EBD, on May 14, 1984. Finding that there was a clear duplication of effort and that Lipman and Weisberg were "unreasonably doing the same work," Judge Davis reduced certain areas of work performed by 50 percent. He found that the combined total of 76.75 hours to complete the proposed findings of fact and conclusions of law was an unreasonable amount of time to complete the task, and this accounted for the 50 percent reduction in that category. The case, like Avila's, did not involve any complex questions.

---

**8.** Coca–Cola, through its counsel, has adopted the "easy way out" on this issue of attorneys' fees by suggesting that the remand Court order the payment of the additional sum of $1,605.48. That sum of money is meaningless to Coca–Cola as anyone would know. However, a decision with respect to attorneys' fees should never be predicated on the ability to pay. Other than pointing out that plaintiff's attorneys are seeking to recover for time expended prior to the filing of any action, and that plaintiff's fees now seek the recovery of 73 percent of the time spent in activities directly related to the preparation of the complaint, Coca–Cola merely states that plaintiff's demands are "unjustified and unwarranted." While the remand Court agrees with this ultimate conclusion, it sees no justification in merely suggesting a compromise by increasing by 10 percent each attorney's participation in certain phases of the case. See: Def.Ex. 9 attached to memo filed October 4, 1988.

**9.** It is true that since the effective date of the recent amendment to Rule 11, Fed.R.Civ.P., there has been some inclination on the part of attorneys to have one attorney review the work of another attorney. Also, like the medical profession, lawyers are more cognizant of legal malpractice claims. But Rule 11 is not a fee-shifting rule and, moreover, the Rule 11 amendment became effective on August 1, 1983, at a time when all pleadings, except the second amended complaint allowed by the Court after the trial, had been concluded. And if attorneys are permitted to charge their clients with a never-ending process of review of everything placed in writing, we will need someone to review the work of the reviewers. Messrs. Lipman and Weisberg do not contend that it was necessary for the work of one to be reviewed by the other. If they do, they should have seen, at a very early date, that Avila had a separate cause of action for retaliation.

## V.

### ANALYSIS—ITEM BY ITEM

Believing, however, that the reference to Judge Davis's order was to emphasize the importance of a Court taking each referenced item listed by the attorneys and making some comment or ruling thereon, the remand Court has coded same as follows:

N/R   No effect on retaliation issue.
D/E   Duplicative efforts by attorneys deemed "unreasonable."
R     Extent of reduction if not entirely eliminated.
D/M   "*De minimis*"—does not justify evaluation or otherwise a routine office duty.
EX    Excessive number of hours used, and reduction to figure stated.
IN    Ineffective work for which compensation should not be allowed.

---

**NOTE:** The following relates only to Exhibits A and B (Weisberg and Lipman) as to their claimed hours for which reimbursement is sought, said Exhibits being filed, after the remand, on September 20, 1988.

| Date and Description | Total Time Claimed | Reimbursement Claimed | Court Action |
| --- | --- | --- | --- |
| 07–30–81 (first interview with claimant) | 2.00 | 1.50 | 0——N/R |
| 08–10–81 (talked to EEOC) | .50 | .35 | 0——N/R |
| 11–05–81 (talked to client; letter to client) | 1.50 | 1.00 | 0———N/R |
| 11–25–81 (EEOC conciliation response) | 3.00 | 2.25 | 0——N/R |
| 11–23–81 (review of case with client) | .50 | .30 | 0——N/R |
| 01–11–82 (2 tel. calls to client; letter to EEOC) | 1.50 | .75 | 0——N/R |
| 03–8–82 (talked to Motto of EEOC—re: settlement) | .50 | .30 | 0——N/R |
| 03–29–82 (same as above) | .50 | .30 | 0———N/R |
| 04–13–82 (talked to Avila) | .50 | .25 | 0——N/R |
| 04–15–82 (talked to EEOC, Motto—right to sue letter) | .15 | .10 | 0——N/R |

(NOTE: Right to sue letter did not cover claim of retaliation.)

| Date and Description | Total Time Claimed | Reimbursement Claimed | Court Action |
| --- | --- | --- | --- |
| 05–25–82 (talked to client—right to sue letter) | .15 | .15 | 0——N/R |

(NOTE: It is interesting to see that Lipman and Weisberg claimed full reimbursement for this small item when, in fact, the right to sue letter had nothing to do with retaliation and was the subject of post-trial discussion.)

| Date and Description | Total Time Claimed | Reimbursement Claimed | Court Action |
| --- | --- | --- | --- |
| 06–12–82 (interview with client)—Weisberg | 2.50 | 2.00 | 0——N/R  D/E |
| 06–12–82 (same)—Lipman | 2.00 | 1.50 | 0——N/R  D/E |

(NOTE: These time charges are deleted as information re: retaliation was not necessary to prepare complaint and, in fact, complaint made no reference to retaliation.)

| Date and Description | Total Time Claimed | Reimbursement Claimed | Court Action |
| --- | --- | --- | --- |
| 06–29–82 (drafted complaint) | 2.00 | 1.50 | 0——N/R |
| 07–01–82 (completed draft) | .50 | .30 | 0——N/R |
| 07–06–82 (drafted complaint) | 1.50 | 1.00 | 0——N/R |

(NOTE: These minor items were performed by Weisberg. No claim of retaliation was made although there were references to differences in

evaluations and compensation. Despite the casual reference to the necessity of filing a complaint in the opinion of the appellate court, the remand Court does not view this item as mandated.)

| | | | |
|---|---|---|---|
| 07–11–82 (review of complaint)—Lipman | .25 | .25 | 0——N/R |
| | | | 0——D/E |

        (NOTE:  At least Weisberg did not claim that the drafting of the complaint was fully reimbursable. Lipman claims full reimbursement for reviewing Weisberg's work.)

| | | |
|---|---|---|
| 07–30–82 (preparing interrogatories and requests for production) | 2.50 | 1.75 |
| 08–03–82 (draft of discovery) | .50 | .35 |
| 08–16–82 (review draft of discovery) | .50 | .30 |

        (NOTE:  The foregoing three items cover 3.5 hours of Weisberg's time, although there is some obvious repetition. Since the procurement of certain information was necessary to prove the damages because of retaliation, the remand Court is of the opinion that a minor amount of time should be allocated to discovery preparation which, in turn, brought forth the Truitt notation of retaliation.)—Reduced by 3 hours.

| | | | |
|---|---|---|---|
| 10–01–82 (picked up documents of discovery at office of def. counsel) | 1.00 | .75 | 0——D/M |

        (NOTE:  See p. 9 for list of documents requested on discovery, for which Weisberg would charge three-fourths of total charge to retaliation claim.)

| | | | |
|---|---|---|---|
| 10–13–82 (review of discovery) | 1.50 | 1.20 | 0——IN |

        (NOTE:  If Weisberg actually reviewed discovery, he would have noted Truitt's retaliatory action as early as this date. He has charged four-fifths of his total time to the retaliation issue, although he never became aware of the fact that Avila then had a separate claim of retaliation.)

Further Discovery

    **NOTE:** The following dates, brief description of what was purportedly done, charges to retaliation issue, etc., are listed but, for reasons stated, are rejected as allowable items by way of attorneys' fees because they do not affect the retaliation issue.

| | | | |
|---|---|---|---|
| 10–27–82 (meeting with Rogoff, paralegal, re: analysis of documents, preparation of further discovery) | 2.50 | 1.75 | See note following |

        (NOTE:  If either Weisberg or Rogoff analyzed the Truitt retaliatory note, their analysis is unknown and, if made, was worthless.)

| | | | |
|---|---|---|---|
| 10–28–82 (drafted memo re: status of discovery preparation) | .50 | .37 | See note following |
| 11–02–82 (consulted with Rogoff, paralegal, as to preparation of further discovery) | .50 | .37 | See note following |
| 11–04–82 (meeting with Rogoff re: analysis of documents) | 3.00 | 2.25 | See note following |
| 11–09–82 (drafting request for production of documents) | 3.00 | 2.25 | See note following |
| 11–17–82 (complete motion for extension of time and request for production) | 2.50 | 1.50 | See note following |

(NOTE: Plaintiff's counsel did file a second motion for production of documents and a second set of interrogatories (11–22–82 and 09–16–83). Likewise, on 09–16–83, plaintiff counsel filed a request for admission of facts. A review of these pleadings will demonstrate that no issue, question or document affecting retaliation was presented. Plaintiff's counsel, in alleged support of their contention that three-fourths of the required hours were devoted to the retaliation issue, refer to item 18 which relates to the first request for production of documents as to which the Court allowed one-half an hour as related to the retaliation issue, and rejected the balance of three hours. The fact that the first set of interrogatories and the first motion for production of documents may have produced the evidence needed to prove the retaliation issue does not, in the opinion of the remand Court, support the view that all further discovery is related to the retaliation issue and should be reimbursed in any manner; assuredly not to the extent of three-fourths of the total time charged. The "further discovery" dealt with the records of Coca–Cola's employees going back to 1972 and defendant quite properly objected as plaintiff's claim, if he ever had one, was barred by the statute of limitations for the older years. The trial court was never called upon to act on defendant's objections and it is assumed that the "further discovery" died a natural death as it was not included in the pretrial stipulation.)

12–08–82 (meeting with defendant's counsel
re: drafting P/T stipulation and prepara-
tion for meeting)                2.00         1.50         Allowed
                                                            0.50—R

(NOTE: While a pretrial stipulation was required by Local Rule and is, therefore, compensable, it is obvious that three-fourths of the total time could not have been devoted to the retaliation issue as the P/T stipulation made no reference to the Truitt retaliatory note or the issue of retaliation. The remand Court has allowed .50 hours only because it was a required action under the Local Rule.)

12–09–82
12–11–82
12–13–82                                                   Allowed
12–16–82                                                   0.50—R

(NOTE: These dates refer to the preparation of the pretrial stipulation required by Local Rule, and two telephone calls with opposing counsel. The total time for all four dates is 3.30 hours. For reasons stated above, the remand Court will charge only .50 hours to the retaliation issue. The attorneys could not have mentioned "retaliation" as they admittedly knew nothing about it as per their statements to the Court when the issue arose.)

01–21–83 (spoke with defendant's counsel re:
discovery)                       .50          .37          0——N/R
02–25–83 (reviewed documents received from
defendant; drafted note to Rogoff)    .50     .37          0——N/R

(NOTE: This must relate to something provided voluntarily by defendant in response to second motion for production of documents. There is no showing that this is related to the retaliation issue.)

03–22–83 (meeting with Rogoff, paralegal,
review status of preparation of Request
for Admissions)                  1.50         1.15         0——N/R

(NOTE: The response to the one request for admission, filed 09–16–83, is still outstanding. See order of Judge Reed entered on January 12, 1984— just prior to trial. Apparently the request for admission of facts is not in the record as it was not forwarded to the Court of Appeals when the appeal was perfected. The handwritten numbers of the docket sheet reflect that certain filed documents were not requested for appellate purposes. In the absence of proof that the request for admission of facts is related to the retaliation issue, the claim for reimbursement is denied as not related.)

06–28–83
06–30–83
07–05–83                                        2.00            1.50          0— —N/R

(NOTE: On these three dates, a total of 2 hours is claimed (with 75 percent charged to the retaliatory issue) for 3 conversations with Rogoff, the paralegal, who apparently had much to do with the discovery proceedings in this case. These conferences involved "further discovery" and are unrelated to the retaliation issue. At least the so-called "further discovery" was unrelated as the substance of the Rogoff conferences are unknown other than the allocation of time charges made by plaintiff's counsel which the remand Court regards as "suspect.")

07–06–83
07–19–83
07–25–83
08–04–83                                        4.50            2.75          0— —N/R

(NOTE: This involves 4½ hours of another series of conferences with Rogoff. While the remand Court acknowledges that the Supreme Court has held that paralegal charges are billable, this does not mean that they are billable where the recovery is based upon a separate and distinct issue from that on which the paralegal performed services.)

09–13–83 (review request for admissions and
second set of interrogatories)                  .50             .37           0— —N/R

(NOTE: See prior comment on above.)

11–29–83 (call to defense counsel re: deposi-
tion and status of discovery)                   .50             .37           0— —N/R
                                                                                    D/M

(NOTE: Plaintiff's counsel concede that depositions of Avila, Cahill and Heath, later taken on 12–16–83, and preparations for same, are not related to the retaliation claim. Under some theory unknown to the remand Court, the fact that the status of discovery may have been mentioned in telephone conversation with defense counsel makes, in the opinion of plaintiff's counsel, a claim reimbursable to the extent of three-fourths of the total claim.)

12–19–83 (review with Rogoff, paralegal,
next step to be taken in case)                  1.00            .75           0— —N/R
                                                                                    D/E

(NOTE: It is a sad day when an attorney must charge a client either $100.00 or $150.00 to merely confer with a paralegal as to what should next be done.)

12–23–83 (review steps to be taken to prepare
for trial)                                      .50             .37           0— —N/R

(NOTE: It may be true that the actual trial did reveal the retaliation issue, but there is no showing that plaintiff's counsel reviewed this issue on stated date.)

12–28–83 (review of outline of Avila deposition prepared by Rogoff) .75 .50 0— —N/R

12–30–83 (letter to plaintiff re: outline of deposition) ·1.00 .75 0— —N/R

> (NOTE: Plaintiff's counsel does not contend that Avila deposition is reimbursable. Why, therefore, should a review by Rogoff and a letter to Avila—all with respect to the deposition—be reimbursable?)

01–11–84 (review with Rogoff re: pretrial actions to be taken on case) 1.00 .75 0— —N/R

> (NOTE: Apparently Weisberg relied too much on his paralegal. It is not contended that Rogoff detected any separate action or statute relating to retaliation.)

01–12–84 (pretrial conference and settlement meeting with opposing counsel) 1.00 1.00 0— —N/R

> (NOTE: Although neither counsel were aware of any retaliation issue, and while plaintiff's counsel has not attempted to claim prior settlement discussions as reimbursable, whatever happened on 01–12–84 is now claimed to be fully reimbursable. If the Court required a settlement meeting, there is no reason to charge the time for same to the retaliation issue—then unknown—and not charge any portion of the time to the issues on which plaintiff failed to prevail.)

01–16–84 (review of documents in preparation for trial; preparation of trial exhibits) 2.00 1.50 0— —N/R
D/E
IN

01–18–84 (review with Rogoff re: new witnesses, amended P/T stipulation; review of documents obtained for trial exhibits) 2.00 1.50 0— —N/R
D/E
IN

01–19–84 (preparation of trial exhibits; review of changes in witness list) 2.50 2.00 0— —N/R
D/E
IN

01–19–84 (review of substance of several witnesses' testimony with Rogoff) 1.00 .75 0— —N/R
D/E
IN

01–23–84 (review of documents obtained in litigation; preparation of trial exhibits) 2.50 2.00 0— —N/R
D/E
IN

01–24–84 (review of plaintiff's request for admissions of fact and letter to opposing counsel re: request for admissions) .75 .50 0— —N/R
D/E
IN

01–25–84 (spoke with Avila re: meeting and questions in preparation for trial) .50 .30 0— —N/R
D/E
IN

| | | | |
|---|---|---|---|
| 01–25–84 (review of documents obtained from defendant and defendant's response to interrogatories for preparation for trial) | 3.00 | 2.50 | 0———N/R D/E IN |
| 01–26–84 (P/T preparation: analysis and review of documents for trial exhibits) | 3.50 | 2.75 | 0———N/R D/E IN |
| 01–26–84 (review with Rogoff of documents discovery in preparation of trial exhibits) | 3.00 | 2.25 | 0———N/R D/E IN |
| 01–27–84 (P/T preparation: review of documents with Rogoff to be included as trial exhibits)—Weisberg | 5.00 | 4.00 | 0———N/R D/E IN |
| 01–30–84 (preparation of trial exhibits) | 3.00 | 2.50 | 0———N/R D/E IN |

(NOTE: Beginning with the entry of 01–16–84 and ending with the entry of 01–30–84, the remand Court is presented with an endless repetition of effort involving in excess of 28 hours of attorneys' time in allegedly preparing for the trial of this case. Of the 28 hours involved, slightly in excess of 22 hours ($3,300.00 in the $150.00 per hour fee schedule, and $2,200.00 in the $100.00 per hour fee schedule) involves essentially nothing but "paper shuffling." It is needlessly repetitive and, if actually expended as alleged, it is a far cry from the retaliation issue which had not then come to light. Many of the listed items are redundant. While the remand Court is inclined to the belief that some pretrial expense should be allowed for Rogoff, the paralegal who the attorneys claim prepared the composite exhibit, there is no reason to allow the attorneys 3 hours to prepare the trial exhibits (see entry of 01–30–84).

While Lipman claims 3½ hours for services expended on 1–27–84, Lipman does not seek reimbursement because, he explains, that the work done was "not related to retaliation claim." How Lipman could prepare and analyze "documents, data, deposition in preparation for trial, review and outline of plaintiff's Pretrial Memorandum" without seeking reimbursement on the same basis as Weisberg is difficult to determine. In fairness, they perhaps thought that only one attorney should seek reimbursement.)

| | | | |
|---|---|---|---|
| 01–30–84 (call to opposing counsel re: discovery, schedule of trial) | .30 | .20 | 0———D/M N/R |

(NOTE: Weisberg charges ⅔ of total *de minimis* charge to retaliation issue. He refers to Item 79 to support same. His theory is that since the retaliation issue was raised during both days of the two-day trial, all matters regarding the trial schedule should be charged as reimbursable to the retaliation issue. The remand Court does not agree.)

| | | | |
|---|---|---|---|
| 01–30–84 (preparation of trial exhibits) | 3.00 | 2.50 | 0———D/E |

(NOTE: We are told that Rogoff prepared the trial exhibits, and, there will be an addition to the allowance of expenses for Rogoff. If a paralegal prepares the exhibits, no charge should be made by the attorney.)

01–31–84 (spoke with opposing counsel re: discovery logistics) — .30 — .20 — 0———D/M N/R

01–31–84 (review with Avila in Miami—re: trial testimony) — 9.50 — 8.00 — R——Allowed for 1 hour to Weisberg

    (NOTE: The remand Court agrees that it is always necessary and proper for counsel to review with his/her client the testimony to be given. The difficulty here is that, without knowledge of the retaliation issue, plaintiff's counsel wish to charge in excess of 84 percent of the total time charge to the retaliation issue. In reducing the time allocation to 1 hour, the remand Court has been overly generous to the attorneys.) —Reduced to one hour.

02–01–84 (review with Rogoff, paralegal, document to be placed in trial exhibits) — 2.50 — 1.75 — 0———N/R

    (NOTE: On 01–30–84, Weisberg charges for his work in "preparation of trial exhibits." Two days later he is reviewing "a document" to be placed in trial exhibits. We have no knowledge what that document may be and how it is related to the issue of retaliation. Apparently, Weisberg is again proceeding under his theory expressed under Item 79.)

02–02–84 (pre-trial preparation of court exhibits) — 2.00 — 1.50 — 0———N/R

    (NOTE: How many times the bill must include charges for preparation of court exhibits is at least debatable. Once again, Weisberg's attempted justification for this charge is by referring to Item 79 where the remand Court disagrees.)

02–03–84 (Weisberg—preparation of witness testimonies; spoke with witnesses) — 6.00 — 4.50
and
(preparation of questions for witnesses) — 6.00 — 4.50
and
02–04–84 (Trial preparation; review and analyze exhibits to prepare direct testimony and cross-examination of witnesses) — 8.00 — 6.50
and
02–05–84 (Weisberg—review with David Lipman re: trial strategy) — 1.50 — 1.00
and
02–05–84 (interview witnesses in Winter Haven (C. Cone and B.S. Mock)) — 3.00 — 2.25
and
02–05–84 (meeting with witnesses Richard Hamilton and Ed Cortez) — 4.00 — 3.00
and
02–05–84 (Lipman—interview of witnesses in Winter Haven, FL; meeting with additional witnesses in Orlando; pre-trial preparation and interview with plaintiff; preparation of outline of trial testimony) — 15.50 — 12.00
and

02–05–84 (Weisberg—review with Avila trial
  strategy and plaintiff's direct testimony)      4.00        3.00
               and
02–05–84 (Weisberg—additional review with
  David M. Lipman re: trial strategy)          2.00        1.25

(NOTE: The time entries of 02–03–84, 02–04–84, and 02–05–84 should be considered together. The remand Court has reviewed the pleadings and finds that Coca–Cola did raise the affirmative defense that Avila would not have been given a merit increase or promotion under any circumstances, irrespective of the retaliation issue. Thus, it was necessary for plaintiff to rebut the pretextual contention that he was not entitled to a merit increase. In addition to Avila, the following testified at Avila's request, namely, Hamilton, Mock, Cone, Sopotnick, Cortez, Hendrickson, and Warner, the last two being called as rebuttal witnesses on the second day of trial.

Consideration must therefore be given to a reasonable *time* allocation for talking to these witnesses, as well as their witness fees and mileage, if any, in the expense category.

Apparently the testimony of these witnesses all related to their own views as to the caliber of Avila's work performance. While none of the witnesses were very convincing, they did convey a sufficient impression on the Court to let the Court believe that the Truitt retaliation was the sole reason Avila did not get a merit increase for 1981, 1982 and 1983.

The difficulty is allocating a reasonable time charge to interviewing these witnesses. To spend 12 hours on 02–03–84 in preparing questions to ask these witnesses borders on the ridiculous. And to spend another 8 hours in analyzing exhibits (previously analyzed on several occasions) and preparing direct and cross-examination of witnesses is not acceptable of belief. We find that on 02–05–84, Weisberg had a rather busy day on this Sunday, the day prior to the commencement of the trial. Since Lipman also went to Winter Haven to interview witnesses, the probabilities are that Weisberg and Lipman drove a car to Winter Haven and charged the travel time to reviewing trial strategy.

If Cone, Mock, Hamilton and Cortez were all interviewed in Winter Haven, Weisberg claims that he spent 7 hours with them. Lipman is more evasive in claiming 15½ hours interviewing unnamed witnesses in Winter Haven; then other unnamed witnesses in Orlando; later interviewing Avila, etc. For what purpose it was necessary for Lipman to interview witnesses or Avila when he did not plan to participate in the trial is a question not yet resolved. With Weisberg spending 14½ hours on Sunday preparing for trial, and with Lipman spending 15½ hours on the same day preparing a case in which he did not plan to participate, these claims can properly raise the eyebrows of any person reviewing what was done on Sunday, February 5, 1984.

The remand Court has, perhaps arbitrarily, decided to allow Weisberg a total of 4 hours at $100.00 per hour in interviewing witnesses used to rebut Coca–Cola's theory that the act of retaliation had nothing to do with the denial of any merit increase to Avila. The witness fees for certain witnesses will be allowed under Litigation Expenses. All of Lipman's 15½ hours are disallowed as being either redundant, unnecessary, duplicative, or not believable.)

02–06–84 (Weisberg—counsel for plaintiff—                Allowed
  first day of trial)                                    6.0 hours

(NOTE:  Counsel for plaintiff are correct in stating that the retaliation issue arose on Monday, February 6, 1984—the first day of trial.  The Court should have allowed Weisberg's time for February 6, 1984, even though the witness, Truitt, was the first witness for the defense and was called by the defendant to testify at 4:05 p.m. on February 6, 1984.  The 6 hours claimed by Weisberg should have been allowed, thus increasing his compensation by $600.00.)—Add to Weisberg's allowable time, 6 hours.

02–06–84 (Lipman—preparation and review
    of data for trial presentation; inter-
    view of witnesses)                    7.00          5.25          Reduced
                                                                                        to zero

    (NOTE:  As previously noted, Lipman was not marked as appearing for the plaintiff and did not, according to the record, participate in the trial.  What he could have been doing as related to this trial is unknown.  Lipman refers to his Item 7 which pertains to interviewing witnesses in Winter Haven and Orlando.  The difficulty with Lipman's contention is that Avila, and at least 5 of his 7 witnesses, were either in the courtroom or the witness room, as the witnesses were sequestered.  The five witnesses and Avila testified in the following order: Hamilton, Avila, Mock, Cone, Sopotnick, and Cortez, all in the morning session.  Hendrickson and Warner testified on the second day of trial as rebuttal witnesses.  Unless Lipman arose early that morning and interviewed Hamilton, Avila, Mock, Cone, Sopotnick, and Cortez, he could not have interviewed any of these witnesses, except in the witness room and the Court does not suggest that this occurred.  This leaves Hendrickson and Warner to interview on February 6, 1984.  The remand Court finds it ridiculous to charge 7 hours for interviewing these two witnesses who were not, in any event, to be questioned by Lipman.  During the trial of any case it is logical for any attorney involved therein to be in the courtroom to assist his partner if required.  To spend 7 hours to interview 2 potential rebuttal witnesses while the partner is engaged in the actual trial is difficult to accept.  Lipman's representations of what he did in connection with this case on February 6, 1984 are rejected in their entirety.)

10–15–84 (Weisberg)
10–17–84 (Weisberg)
10–18–84 (Weisberg)                                              Reduced to
10–19–84 (Lipman)                                        6.0 hours——R
                                                                                   D/E

    (NOTE:  After filing their fee petition on 09–10–84, together with an extensive memo to support same, Coca–Cola filed a 5–page memo in opposition on October 3, 1984.  Plaintiff thereupon elected (but was not required) to file a 10–page reply to Coca–Cola's memo.  Charges for these services were not included in the original fee petition filed on 09–10–84.  The Court's decision on the fee petition was not filed until 02–01–85.  The total time charged for these 4 days aggregate 10 hours—9¼ hours for Weisberg and ¾ of an hour for Lipman (the latter being a needless repetition).  If the doctrine of "Fees for Fees" has been approved, it seems that services performed in brief writing, even though valueless in many instances, should be considered as compensable.  Assuming the remand is to permit consideration of work on the district court level which was not heretofore presented as an issue, the Court modifies Weisberg's hours and reduces same to 6 hours or $600.00.  The Lipman claim is disallowed as duplicative.  It should be noted that counsel for plaintiff made no effort, prior to the remand in this case, to call the Court's attention to services performed in filing a reply to Coca–Cola's memo, nor to answering the Court's inquiry propounded to counsel by letter dated 12–02–84).

12–06–84 (Weisberg)
12–11–84 (Weisberg)
12–18–84 (Weisberg)
12–19–84 (Weisberg)
12–20–84 (Weisberg)                                      0——D/E

(NOTE:   On 11–2–84, the Court wrote to counsel requesting further informa-
tion as to the fees and expenses charged by plaintiff's counsel in their
fee petition filed 09–10–84. Plaintiff's counsel responded with a
10–page memo and 4 affidavits filed on 12–24–84. It is, of course, the
burden upon the party seeking the allowance of fees to maintain
records in sufficient detail to enable the Court to know what was done
and to what issue it was directed. See: *Hensley, supra,* 461 U.S. at
437, 103 S.Ct. at 1941, quoting from *Nadeau v. Helgemoe,* 581 F.2d at
279 (1st Cir.1978), referred to on p. 692 of this opinion. The primary
purpose of the Court's inquiry was to obtain an explanation of the
reimbursement for Litigation Expenses (see paragraph 3 of letter of
11–02–84). The "expenses" as originally presented merely divided
same into 10 categories aggregating $7,990.00, with no explanation as
to what was done and why it should be related to the retaliation issue.
The Court disallows any claim for attorneys' fees with respect to any
alleged study or work done in responding to the Court's letter of
11–02–84. This is something for which the "Fees for Fees" should
have included without the necessity of an inquiry from the Court.
Had counsel filed their original fee petition on 09–10–84 with the
realization that they were entitled to be compensated only on the
retaliation issue, as suggested by letter to counsel in August, 1984,
the confusion would not have arisen.)

| | | |
|---|---|---|
| 05–08–87 (draft for appellate brief)—Weisberg | 2.50 | 2.50 |
| 05–19–87 (draft appellate brief)—Weisberg | 4.00 | 4.00 |
| 05–20–87 (reading and reviewing legal research, drafting brief)—Weisberg | 3.50 | 3.50 |
| 05–22–87 (analysis of related issues and case law in preparation of 11th Circuit brief)—Lipman | 1.25 | 1.25 |
| 05–25–87 (general research and review of documents in preparation of 11th Circuit brief)—Lipman | 3.75 | 3.75 |
| 05–26–87 (draft appellate brief)—Weisberg | 5.00 | 5.00 |
| 05–27–87 (drafting appellate brief)—Weisberg | 6.00 | 6.00 |
| 05–28–87 (drafting appellate brief)—Weisberg | 7.00 | 7.00 |
| 05–28–87 (research, preparation of draft: preparation of 11th Circuit brief)—Lipman | 11.50 | 11.50 |
| 05–29–87 (research, preparation and draft of 11th Circuit brief)—Lipman | 12.50 | 12.50 |
| 05–29–87 (drafting and editing appellate brief)—Weisberg | 6.50 | 6.50 |
| 05–30–87 (editing appellate brief)—Weisberg | 4.00 | 4.00 |
| 05–30–87 (research, preparation and draft of plaintiff's 11th Circuit brief)—Lipman | 10.50 | 10.50 |

| | | |
|---|---|---|
| 06–01–87 (research, preparation and draft of plaintiff's 11th Circuit brief)—Lipman | 9.00 | 9.00 |
| 07–22–87 (preparation and drafting of plaintiff's *reply* brief in 11th Circuit)—Lipman | 1.75 | 1.75 |
| 08–10–87 (preparation and drafting of letter to Clerk of 11th Circuit re: affect [sic] of St. Frances College decision)—Lipman | .25 | .25 |
| 09–29–87 (review briefs for oral arguments)—Weisberg | 1.50 | 1.50 |
| 09–30–87 (review of briefs, etc., in preparation for oral argument)—Weisberg | 4.00 | 4.00 |
| 10–04–87 (preparation for oral argument; reviewed record and brief)—Weisberg | 8.00 | 8.00 |
| 10–04–87 (analysis and review of 11th Circuit briefs, District Court Attorney Fee decision for preparation of trial argument with Bob Weisberg; call to Bob Weisberg re: preparation for oral argument)—Lipman | 3.75 | 3.75 |
| 10–05–87 (preparation for oral argument; oral argument at Court of Appeals)—Weisberg | 6.00 | 6.00 |
| 07–14–88 (review of Eleventh Circuit decision)—Weisberg | 1.50 | 1.50 |
| 09–06–88 (memo on remand proceedings)—Weisberg | 6.00 | 6.00 |
| 09–08–88 (memo and itemization of schedule of hours for remand proceedings)—Weisberg | 4.00 | 4.00 |
| 09–10–88 (memo and itemization of schedule of hours for remand proceedings)—Weisberg | 4.00 | 4.00 |
| 09–12–88 (editing remand submissions)—Weisberg | 4.00 | 4.00 |
| 09–17–88 (review of schedule of hours for itemization)—Lipman | 2.00 | 2.00 |
| 09–19–88 (review of legal memo on remand and submissions)—Lipman | 2.50 | 2.50 |

(NOTE: The itemizations beginning 05–08–87 and continuing through 10–05–87, the date of argument, all relate to the prior appeal in which the Court of Appeals directed that each party pay their respective costs. This, it is believed, exonerated Coca–Cola from the payment of any appellate costs as incurred by Avila and his counsel in the preparation and perfecting of the appeal. No allowance will be made for these items unless the Court of Appeals specifically directs same.

The itemization beginning 07–14–87 and continuing through 09–06–87 is related to the remand.

The itemization beginning 09–08–87 and continuing through 09–19–87 is their *second* "Fees for Fees" for the purpose of confining charges to the retaliation issue.

While, in the opinion of the remand Court, fees for preparation, drafting and arguing appellant's brief (which no longer involved Avila and only concerned the attorneys), as well as the appellate expenses,

are not allowable, the foregoing itemization clearly demonstrates the duplication of effort and excessiveness of time charged. By making no ruling on the appellate fees or expenses, the remand Court is not approving the hours listed in the itemization. The same is true as to the hours spent following remand and the supplementary "Fees for Fees" request for hours expended.)

---

## THE POST–FEBRUARY 7, 1984 ENTRIES

It could be argued that the trial court, in its memorandum filed February 1, 1985 (See Vol. 3, p. 00684, Tab 60), has tacitly approved all of the plaintiff's itemizations as to fees and expenses claimed to have been incurred on and after February 7, 1984. Prior to plaintiff filing his fee petition, the Court, by letter to counsel dated August 15, 1984, advised that, in the Court's opinion, any allowance of attorneys' fees should be limited to the time the retaliation issue arose. Of course, this did not deter plaintiff's counsel in claiming fees since the date Avila first visited their offices; i.e., July 30, 1981. A review of the Court's Memorandum and Order filed February 1, 1985, does not reflect any specific finding as to the reasonableness of the charges by plaintiff's attorneys, other than that such charge was incurred on or after February 7, 1984.

The attorneys for plaintiff now want the remand Court to consider new matters, both prior and subsequent to February 7, 1984. Initially, they wish for the Court to adopt some theory of retroactivity because of their increased rates and alleged delay in payment. However, at no place in any brief on the trial or appellate level do they agree that they received for their benefit the check of Coca–Cola in the sum of $17,-706.54, covering attorneys' fees of $16,-395.00 and litigation expense of $1,311.54, which check was received pursuant to a letter dated November 7, 1985. Since the attorneys seek retroactivity, the remand Court assumes that the attorneys are also willing to pay interest at 12 percent per annum, the Florida rate, on the aforesaid

sum of $17,706.54. The remand Court disposes of this issue by saying that any delay in payment could only possibly be on the excess to be found by this opinion and, bearing in mind that Avila's attorneys attempted to appeal the allowance of February 1, 1985 (See notice of appeal filed February 11, 1985, Vol. 3, Tab 16), without even requesting an interlocutory certification, the remand Court respectfully declines to adjust the award of attorneys' fees to accommodate the increased rates promulgated by Lipman and Weisberg.

The remand Court has considered the additional claims of plaintiff's attorneys in filing a response to Coca–Cola's brief on the original fee petition, and has allowed the claims in part. This is completely new matter.

The remand Court has also considered, and rejected, the claims for fees sought in preparing for and perfecting the appeal which resulted in the remand, as well as the fees sought following the remand. The remand Court has not considered the hours or necessity for the work on appeal or remand.

Under these circumstances it seems appropriate for the remand Court to now consider the itemizations for the period beginning February 7, 1984, and ending September 10, 1984, when the initial fee petition was filed. This includes the rather "shocking" claims of Weisberg and Lipman claiming a total of 24 working hours to prepare their bill for services rendered, which bill includes the pre-February 7 and post-February 7 services.

Except for the "Fees for Fees" itemization, the remand Court will comment only briefly as to other disputed charges. They are as follows:

1. Weisberg has charged 5 hours on 02–07–84 for "Legal research on retaliation issue; draft of legal memorandum." For the same day, Lipman has charged 2½ hours for "Research, preparation and drafting of Plaintiff's Supplemental Memorandum re: Ancillary jurisdiction to entertain retaliation charge." The Court recessed at 4:40 p.m. on February 7, 1984, and Weisberg was continuously engaged in the trial of the case the entire day. While this appears to be an obvious duplication of effort on the part of the two partners, Weisberg was confronted with a semi-emergency in that the trial court had threatened to dismiss the case in the absence of any authority as to the right to consider a retaliation claim, not the subject of an EEOC charge. On the following day, plaintiff's counsel produced the *Gupta* case. The remand Court will allow a total of 5 hours for the extra research, after the trial day, irrespective of who performed the services. It will be credited to Weisberg's time, and Lipman's 2½ hours will be rejected.

2. On February 21, 1984, Weisberg charges ³⁄₁₀ of an hour for speaking to opposing counsel as to a settlement proposed by Coca–Cola. By this time, of course, the retaliation issue was known by all. There is no proof of the details of this conversation and, while the remand Court feels that it is *de minimis*, the matter is too small to controvert and accordingly is allowed.

3. On February 12, 1984, Weisberg has charged 4 hours to "Legal Research on application of Rule 15(b) to Retaliation Issue; review of trial testimony." Lipman, on the same day, charges 2¾ hours for the same matter, i.e., "Research re: preparation of Memorandum re: Rule 15(b) issue." The remand Court, faced with this claimed duplicity of effort, will allow the 4 hours to Weisberg and reject the 2¾ hours to Lipman.

4. On February 14, 1984, Weisberg has a 6–hour charge, reading as follows: "Drafted post-trial memorandum; completed legal research for post-trial memorandum of retaliation issue; reviewed and analyzed summaries of trial testimony."

The Court had scheduled a hearing on February 15, 1984, to give consideration to permitting the filing of the amended complaint, the possible prejudice to the defendant, and the Rule 15(b), Fed.R.Civ.P., issue. Later, counsel for defendant requested time to brief the issues after the completion of the transcript. There is an additional 1½ hours charged by Weisberg on February 14, 1984, entitled "Editing and completion of plaintiff's post-trial memorandum." Since this is so close to February 15, 1984, the remand Court assumes that the 7½ hours expended on February 14 relates to the same memo on which research was conducted on February 12, 1984. The trial court had not requested any written memo in anticipation of the February 15 hearing, but accepted plaintiff's submission at the hearing, and then directed defendant to brief any issues on retaliation or Rule 15(b). The unsolicited submission by counsel for plaintiff was not an expansive document and, in the opinion of the remand Court, the 7½ hour charge on February 14 (when considered with the 4–hour charge approved for February 12) represents an overcharge of at least 4 hours which should be deducted from Weisberg's total hours and, as indicated, *supra*, Lipman's 2¾ hours should also be deleted.

5. For the supplemental brief referred to in the hearing of February 15, and to be prepared after the completion of the transcript, the hours claimed are as noted previously (pp. 29–30). In fairness to plaintiff's counsel, it was a thoroughly prepared document but, as indicated on pp. 29–30 of this opinion, the time required by Weisberg is reduced to 55 hours, and Lipman's three hours are deleted. When a total hourly cost for preparing a brief in a simple case tried in two days runs as high as $5,500.00 to be paid by the client or someone else responsible for the payment of such charges, the attorneys should, and could, devise means to reduce the extensive length of such a brief and deal only with the issues which may appear to be disturbing to the trial court.

Reduction of hours (Weisberg) – 18 hours
Reduction of hours (Lipman) – 3 hours

6. Lipman asserts a claim for 1¼ hours on May 6, 1984 for "Preparation and draft of plaintiff's post-trial memorandum of law," which is the same document for which the trial Court allowed 1.25 hours but which, upon review and considering the obvious duplication of effort, must be deleted. Lipman also asserted a claim of 1¾ hours for services on April 24, 1984, which falls in the same category. The reduction of this 3 hours is already covered under "5." above.

7. On July 11, 1984, Lipman claims 1½ hours for "Preparation, draft and re-write of plaintiff's post-trial memorandum directed to relief." Since Weisberg has claimed at least 12 hours devoted to this same subject for itemizations on June 19, 1984, June 28, 1984, July 2, 1984, July 9, 1984, July 10, 1984, and July 11, 1984, Lipman's work is an obvious duplication of effort. Accordingly, Lipman's hours are reduced by 1½ hours.

## LITIGATION EXPENSES

The opinion of the Court of Appeals for the Eleventh Circuit in *Avila v. The Coca-Cola Company, supra,* makes no comment as to the previously allowed and disallowed expenses by the trial court. Only in footnote 6 is there any mention of expenses where the Court said:

> The district court is directed to make a similar redetermination on remand with respect to appellant's request for litigation expenses.

An examination of the briefs of Avila filed in the Court of Appeals discloses that, while plaintiff's counsel do not agree with the trial court and seek an adjustment of expenses incurred prior to February 7, 1984, there is no specific reference to any particular category of expenses either allowed or disallowed by the trial court.

After remand, plaintiff's counsel filed, on September 20, 1988, under Ex. E of an Appendix Exhibit Supporting Plaintiff's Motion For Attorney Fees For Retaliation Claim, a long list of names, dates, costs incurred, and amount for which reimbursement is sought. The period involved ran from January 17, 1982 through August 5, 1988. The costs allegedly incurred aggregated $6,151.83 and reimbursement is sought to the extent of $2,963.25. The difficulty with this exhibit is that it does not say what each payee may have done to earn the amount stated and, of course, it includes appellate expenses despite the mandate of the Court of Appeals.

Coca–Cola's counsel, when confronted with this exhibit, merely stated that it was impossible to respond as "Defendant is completely unable to ascertain whether the expenses sought were essential to determination of the retaliation claim." Thereafter, on October 3, 1988, counsel for plaintiff filed a reply memorandum which, for the first time in this litigation, attempted to explain the purpose for which the expense was incurred. We immediately note that $833.36 of the total expenses for which reimbursement is sought ($2,963.25) is devoted to appellate expenses. The notice of appeal was filed on December 15, 1986. Four items listed on the Amended Schedule of Expenses, aggregating $248.80, fall clearly within the expenses of appeal, but plaintiff's counsel do *not* seek reimbursement for these four items.

As to the remaining items for which reimbursement is sought, with the exception of witness fees for several parties (hereinafter mentioned), the major portion is what was paid to paralegals. Counsel for plaintiff itemized dates of payments to paralegals and/or investigators aggregating $2,765.10, for which reimbursement is sought in the sum of $1,961.87 (slightly in excess of 70 percent of the total paid to paralegals and/or investigators). At least counsel's itemization is a trifle better than as stated in the fee petition originally filed in September 1984, where the total amount paid to paralegals/investigators was listed at the rather absurd figure of $4,966.45, without any detail as to when the amounts paid to the listed paralegals were incurred or paid. Since the Amended Schedule of Expenses covers a period beginning 01–17–82 through 08–05–88, it may be assumed

that it includes everything paid to paralegals/investigators during that time.

Without attempting to ascertain what any paralegal/investigator may have done to resolve or assist on the retaliation issue, the trial Court, in its fee award filed February 1, 1985, allowed $908.50 because plaintiff's counsel represented that these paralegal/investigator services were performed subsequent to February 7, 1984. This amount is questionable as the retaliation issue was then well-known to all, no further facts were required, and the promotion issue ultimately resolved in favor of Coca–Cola would not have justified the allowance of any expenses incurred by counsel. Nevertheless, the remand Court has no desire to examine further this item of $908.50, except to note that the trial Court was apparently generous in allowing this amount for paralegal/investigator expense incurred subsequent to February 7, 1984, where all facts were known and only a small amount of legal research was required.[10]

We are told that Rogoff was the person who prepared the exhibits for trial and who compiled the composite exhibit used by the Court and counsel. While the information supplied by Rogoff was available elsewhere, it did serve some convenience to all persons using same. This information included Avila's salary; his raises as contrasted with others in the Engineering Department as to the years 1980, 1981, 1982 and 1983; and the infamous Truitt notation of retaliation. Having made no allowance for Rogoff's services prior to February 7, 1984, it is appropriate to allow 20 hours for the preparation of the critical exhibit. As to the other exhibits, Weisberg claimed that he prepared the exhibits. As to the expense for 20 hours, we are told that Rogoff, at the start of this case, received $10.00 per hour, but at some point during the history of the Avila case the hourly rate was increased to $15.00 per hour.

Accordingly, without deciding whether Rogoff received $10.00 or $15.00 per hour in January 1984, the Court will allow a rate of $15.00 per hour, or a total additional expense allowance of $300.00 for Rogoff's services in preparing the exhibits to be used at trial in connection with the retaliation issue.

This brings us to the final expense item to be considered. Witness fees were apparently paid by the law firm for which reimbursement is sought, as follows:

| | |
|---|---|
| Richard Hamilton | $ 37.87 |
| Edward L. Cortez (Incorrectly referred to in plaintiff's amended schedule as "Ed Cortey") | 24.18 |
| B.C. Mock | 28.95 |
| David Sopotnick | 28.95 |
| Charles Cone | 28.95 |
| Total paid for witnesses to be subject to reimbursement | $148.90 |

Believing that these witness fees are correctly chargeable to plaintiff's efforts to defeat Coca–Cola's pretextual affirmative defense, this additional sum is added to Litigation Expenses.

In all other respects, the expenses heretofore allowed or rejected are reaffirmed.

In the interim fee award filed on February 1, 1985, the trial Court fixed the hours of counsel as follows:

Weisberg – 133.05 hours
Lipman    – 25.75 hours

The following additions will be made to Weisberg's hours:

| | |
|---|---|
| 07–30–82 through 08–16–82 | .50 |
| 12–08–82 | .50 |
| 12–09–82 through 12–16–82 | .50 |
| 01–31–84 | 1.00 |
| 02–03–84 through 02–05–84 | 4.00 |
| 02–06–82 (trial date—first day) | 6.00 |
| 10–15–84 through 10–19–84) | 6.00 |
| Total additions—Weisberg | 18.50 |

---

10. It would appear that Lipman and Weisberg use their paralegals or investigators for research purpose. For example, on 04–18–84, Weisberg conferred with S. Ehrlich as to issues to be researched. On January 27, 1984, he conferred with D. Shelman as to law to be researched. While this practice is probably permissible, it should reduce the hours expended by the lawyers handling the case.

Deductions made to Weisberg's hours:

| | |
|---|---|
| 02–02–84 (Fees for Fees) | −3.00 |
| 02–14–85 | −4.00 |
| 04–23–84 through 05–07–84 | −18.00 |
| Total deductions—Weisberg | −25.00 |
| Net Loss to Weisberg Hours | −6.50 |
| Loss of Fees | $650.00 |

The following deductions are made to Lipman's claim for fees:

| | |
|---|---|
| 09–02–84 (Fees for Fees) | −16.00 |
| 02–07–85 | −2.50 |
| 02–12–85 through 02–14–85 | −2.75 |
| 04–23–84 through 05–07–84 | −3.00 |
| 07–11–84 | −1.50 |
| Total deductions—Lipman | −25.75 |
| Net Loss to Lipman Hours | −25.75 |
| Loss of Fees | $3,090.00 |

Coca–Cola does owe plaintiff's counsel an additional $448.90 for Litigation Expenses—a difference of $3,291.10 in favor of Coca–Cola. However, as noted, Coca–Cola has sought no affirmative relief and, therefore, no refund will be ordered and, since the allowances and fees ordered pursuant to the order of February 1, 1985, were fully paid by Coca–Cola on or about November 7, 1985, a judgment will merely be entered to the effect that nothing further is due to the real parties in interest, Lipman and Weisberg, by the defendant, The Coca–Cola Company.

■ Three final statements. Nothing has been said as to the foregoing deductions from the hours of Lipman and Weisberg in preparing their charges for services rendered. It will be noted that Weisberg has been reduced from 8 to 5 hours and the 16 hours charged by Lipman have been eliminated. When "Fees for Fees" were authorized by one or more appellate opinions, it was not thought that counsel seeking fee allowances would go into such detail in every case. Actually, what any Court is interested in would be the contemporaneous entries made by the attorneys, and now, where necessary as in this case, some evidence to show that the services performed were related to the retaliation.

In many instances these could be shown on a computer printout but, in the absence of a computer, photocopies of the original entries could be considered. Briefs are not of any great value but, in this case, they could have given the nature of the work done as it affects the retaliation issue. To suggest that clients or other parties should be charged nearly $5,000.00 for preparing the attorneys' bill for services rendered is utterly ridiculous. If these attorneys wish to compile a petition for fees in a very simple case, and spend 24 hours in preparing same because of the quantity of papers submitted, they may, of course, do so, but in this case at least, if permitted to review the prior charges between February 7, 1984 and September 10, 1984, the remand Court has placed a $500.00 cap on the "Fees for Fees." Thus, if the time spent, multiplied by the hourly rate, exceeds $500.00, the additional time will be at the expense of the attorneys, and not the client or the party being charged with attorneys' fees. Moreover, as to the partner preparing the petition, it seems logical that the partner primarily handling the case should prepare the fee petition, and not another partner who occasionally reviewed work of the other partner and primarily handled the appellate brief-writing.

If the remand Court is incorrect in considering the fee allowances beginning February 7, 1984 and ending September 10, 1984, there would be a small difference favorable to the plaintiff to inure to the benefit of plaintiff's attorneys. The remand Court has adopted the plaintiff's theory in reexamining the entire record where plaintiff, on p. 6 of his reply memorandum following remand, says:

The fact that the Plaintiff's entitlement for fees for litigating the fees issue had not been previously addressed by the District Court is not relevant to whether this Court [the remand Court] can now award Plaintiff fees for this time.

Even if the remand Court is foreclosed from examining the itemizations for the period beginning February 7, 1984, and ending September 2, 1984, we have an addition to Weisberg's hours to the extent of

18½ hours or $1,850.00, plus expenses of $448.90. We would have no deductions as to Weisberg's hours and no additions or deductions as far as Lipman is concerned. The total additional amount for fees and expenses would be $2,298.90. However, adopting plaintiff's theory that we should now reexamine the entire record, including the hourly rate charged by the attorneys on a retroactive basis, we find that plaintiff's attorneys were overpaid on the hourly rate basis following their fee petition filed on September 10, 1984 which Coca–Cola paid in full on or about November 7, 1985, prior to the disposition of the promotion issue and the entry of final judgment.

Under all the facts and circumstances, especially where the critical factor as to the result is examined, a fair and reasonable fee would have been $12,500.00, plus properly allowable expenses. Since this is considerably lower than the amount previously allowed and paid, a final judgment will be entered for the defendant.[11]

## SUMMARY

The problems created by billable hours have brought about a storm of criticism directed to the legal profession, especially when there are excessive billable hours. As the 85–member Maryland State Bar Association Professionalism Conference recently said, an attorney billing an excessively high number of hours needs counseling, not praise. A true professional goes considerably beyond practicing law "by the numbers." The time and time sheets should, at best, be only a rough guide or starting point and not the master of relations with clients (or those ultimately responsible for the payment of the bill). The time sheet is not the disease, but merely a symptom.

Any person would agree that an opinion such as this one is not required; nor is it proper for any Court to review in detail each and every itemization charge made by plaintiff's attorneys. As Justice Powell said in *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941: "A request for attorney's fees should not result in a second major litigation." The trial court recognized the problem when it observed the excessive hours charged by the attorneys in preparing their own petition for fees. It was to avoid any discussion of this matter that the trial court concluded to allow the hours on and after February 7, 1984 when the trial court erroneously thought that the retaliation issue came to light on that day (as noted, it came to light on the late afternoon of February 6, 1984), thereby avoiding a possible criticism of counsel, but with the remand Court being required to search each itemization to determine its relationship to the issue of retaliation it has become necessary to comment freely as to what the remand Court believes occurred. If a Court must accept the stated contents of time sheets, or whatever the attorneys say, then the remand Court would have no control over the fixing of fees in this case. With the reluctance of one attorney to attack the hours and rates as set forth by his adversary, primarily because the non-attacking attorney does not want to be the recipient of an attack at some future date when the positions of counsel are reversed, the controversy, in the absence of any settlement, lies between the petitioning attorney and the district court.

The remand Court has carefully considered the relationship between the amount of fee awarded herein and the results obtained. The remand Court does not see, in the results obtained, which result Justice Powell says is always critical in determining a proper and reasonable fee, anything of merit which justifies even as much as has been awarded and heretofore paid by Coca–Cola. It is true that the extent of the relief granted does not necessarily resolve what is a reasonable fee in light of the level of success.

Since Lipman and Weisberg had the case on a contingent basis, there was really no

---

**11.** A review of correspondence in this case discloses that, by letter dated August 6, 1985, defendant's counsel sent his firm's check for $1,395.63, covering fees and costs allowed in the contempt proceeding. This supplies the amounts not heretofore known but does not affect the outcome of these proceedings.

purpose in keeping time records except that they knew, as we all know, that Coca-Cola would be required to pay an attorneys' fee if Avila prevailed. Since Lipman and Weisberg would not be disturbed as to their arrangement with Avila, it was their responsibility to keep detailed records, not only as to the time spent but also as to the issues involved and what particular work was done.